WILLIAM H. TRIPLETT, APPELLEE, V. OLAF S. LUNDEEN ET AL., APPELLANTS.

272 N. W. 307

FILED MARCH 26, 1937. No. 29907.

*Stiner & Boslaugh* and *Lester R. Stiner,* for appellants.

*Hart & Joyce, R. C. Mullins* and *Bruckman & Dunmire, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and MESSMORE, District Judge.

GOOD, J.

This is an action to recover damages for personal injuries and property damage. The action arises out of an automobile collision. Plaintiff alleged that the collision was due to the negligence of the defendants. Defendants denied negligence on their part and alleged that plaintiff's injuries were the result of his own negligence. The reply

was a general denial. Trial of the issues resulted in a verdict and judgment thereon in favor of plaintiff. Defendants have appealed.

The following summary of facts is disclosed by the record: On the afternoon of March 11, 1935, defendants were traveling east on highway No. 36 between the towns of Meadville and Laclede in the state of Missouri, in an automobile owned by defendant Lundeen and being operated at that time by defendant Kissinger. The scene of the accident occurred in what is designated as the Locust Creek valley between the towns of Laclede and Meadville. The highway at that point runs directly east and west and is paved. There is a concrete slab 20 feet wide, and in addition a strip of asphalt and macadam, on either side of the slab, about three feet in width, and a dirt shoulder about five feet wide lies outside of the asphalt strips, thus making the entire width of the highway about 36 feet. Locust Creek valley lies between two hills, one on the east side and the other on the west side of the valley. From the brow of one hill to that of the other is a distance of about two and a half miles; from the bottom of one hill to that of the other is a distance of about two miles. The point of collision was either about midway between the two hills, or some distance east of that point. Plaintiff fixed the point of collision at about a half mile west of the east hill, while a number of other witnesses placed the location of the accident as near the half-way point between the two hills. The evidence shows that the day was clear, the pavement dry, and the highway a straight road, with nothing to obstruct a clear view of the road or of other vehicles, and it was possible to look directly from the top of one hill and observe the highway across the valley to the top of the other hill.

Defendant Kissinger was driving eastward on the south side of the pavement. When he began to descend the slope of the west hill into the Locust Creek valley he saw in front of him, about a quarter of a mile away, another car traveling east and on the same side of the highway. This car was being driven by one Zancker and will hereinafter

be referred to as the Zancker car. Kissinger testified that he was driving at the rate of about 40 miles an hour. Zancker testified that he was driving between 40 and 50 miles an hour, and the evidence clearly shows that Kissinger was overtaking the Zancker car. Kissinger admitted that he observed a car coming from the east slope, which was, in fact, the car driven by plaintiff. Plaintiff was driving westward and on the north side of the paving at a speed which he estimated at from 35 to 40 miles an hour. In front of the Zancker car, and also proceeding eastward, were a team and wagon driven by one Cross. Cross was likewise driving on the south side of the paving, and his team was walking. Kissinger testified that he did not see the team and wagon which was in front of the Zancker car. As Kissinger proceeded he gained upon the Zancker car, and the Zancker car also gained rapidly upon the team and wagon.

The four vehicles approached the scene of the accident, each being on its proper side of the highway, at approximately the same time. Zancker saw the plaintiff's car coming from the east and did not undertake to pass the team and wagon until plaintiff's car should pass. He slackened the speed of his car. Defendants insist that Zancker suddenly stopped his car, without giving any warning of his intention so to do. The evidence is in conflict as to whether Zancker stopped his car or only slackened its speed. No witness, other than Kissinger, testified that the Zancker car stopped. Other witnesses testified that Zancker only decreased its speed. Kissinger testified that when he saw the Zancker car slow down he applied his brakes, but was unable to stop his car, and that the application of the brakes caused his car to swerve to the left. He admits that the right side of his front bumper came in contact with the left side of the rear bumper of Zancker's car and that this caused his car to swerve still further to the left. He denies that he intended to pass the Zancker car, but alleges that his car swerved to the left solely because of his application of the brakes and his inability to stop his car. Ap-

parently, he observed that the Zancker car was slowing down when he was about 100 feet from it. The collision between the car driven by Kissinger and the plaintiff's car occurred about opposite the Zancker car and on the north side of the highway. Kissinger testified, however, that the front wheels of his car were not more than two or three feet over the center line of the paving, but the pictures of the cars taken after the collision are in evidence. They show that the right front side of defendants' car was crushed in and the right front of the plaintiff's car was crushed in, and that after the accident both cars, of plaintiff and defendants, were on the north side of the highway, partly on the pavement and partly on the north shoulder. We think that the physical facts show that Kissinger must be mistaken when he claims that his car was only two or three feet over the center of the slab.

Defendants admit that there is ample evidence tending to show that defendant Kissinger was negligent and that his negligence is imputable to defendant Lundeen, but complain of a number of the instructions, in that they do not specifically require the negligence of defendants to be the proximate cause of the injuries sustained by plaintiff. We think a slight review of the situation is proper before considering whether the instructions were prejudicially faulty. An examination of the record fails to show any negligence on the part of the plaintiff. It is clear that the accident resulting in plaintiff's injuries was caused by the negligence of defendants, or the negligence of Zancker, or the combined negligence of defendants and Zancker. There is no other explanation of the accident.

In instruction No. 3 the court informed the jury of the allegations of plaintiff's petition, and recited plaintiff's claims in this language: "That the injuries which plaintiff did so sustain if any, were caused by the negligence of the defendants in the particulars claimed by the plaintiff and stated to you in another instruction." And, after a further recital of the material allegations of the petition, the instruction proceeded: "But if the truth of all of said ma-

terial allegations as above stated to you have been established at the trial by a preponderance of the evidence, then your verdict should be for the plaintiff." In instruction No. 4 the court correctly defined what is meant by the term "proximate cause." In instruction No. 11 the jury were informed that if they found from the evidence that the collision and injuries proximately resulted from negligence on the part of the defendants the plaintiff could recover, unless plaintiff was also guilty of negligence proximately contributing to the injury. In instruction No. 12 the court told the jury: "If you find the defendants were not innocent, and that their negligence caused the injury to the plaintiff or his property, * * * and it has not been shown the plaintiff was negligent to any extent, then the plaintiff would be entitled to recover."

It is true that in a personal injury action mere negligence of defendants will not give rise to the right of recovery by the plaintiff, unless the negligence was the proximate cause of plaintiff's injury. However, it is not indispensable that the term "proximate cause" should be used. It is sufficient if it appears that defendants' negligence was the sole cause, or the efficient cause, or was the direct cause. In the instructions we think it clearly appears that the expression, that plaintiff's injury and damage were caused by the negligence of defendants, is equivalent to saying the defendants' negligence was the efficient or direct cause of plaintiff's injury, especially in view of the other instructions to which we will now refer. In another of the instructions the court informed the jury that if plaintiff's injuries were caused by the negligence of Zancker alone then the plaintiff could not recover; and in another instruction the court informed the jury that if plaintiff's injuries were caused by the concurring negligence of Zancker and defendants then plaintiff would be entitled to recover.

It is a rule that the instructions to the jury must be considered together, and if, when construed as a whole, they properly state the law it is sufficient. *Vithen v. Jensen,* 128 Neb. 188, 258 N. W. 267; *Iden v. Evans Model Laundry,* 121

Neb. 184, 236 N. W. 444; *Sheridan Coal Co. v. Hull Co.*, 87 Neb. 117, 127 N. W. 218.

In *High v. Waterloo, C. F. & N. R. Co.*, 195 Ia. 304, 190 N. W. 331, it was said that an instruction that plaintiff could only recover for injury in consequence of defendants' negligence is not misleading as to the question of proximate cause, although the words "proximate cause" were not used. See, also, 45 C. J. 1346.

In *Oliver v. Nelson*, 128 Neb. 160, 258 N. W. 69, this court held: "In an action for damages for negligence, an instruction that plaintiff must establish by the greater weight of the evidence that the negligence of the defendant caused the accident and the damage is sufficient relative to proximate cause, where there is no question of a remote or intervening cause."

Taking the entire charge to the jury, we are of the opinion that the material questions, at least so far as defendants were concerned, were fairly submitted. Criticism might be offered that the trial court submitted to the jury the question of the contributory negligence of the plaintiff and gave the comparative negligence rule which could apply only where there was contributory negligence on the part of the plaintiff, but the evidence did not justify the submission of these questions to the jury. In this respect the instructions were unduly favorable to the defendants.

In the petition plaintiff alleged that his right of recovery was governed by statutes of the state of Missouri, and pleaded certain portions of the statutes of that state. Defendants, by a general denial, put in issue the question as to whether or not the pleaded statutes were a part of the law of Missouri. On the trial plaintiff called a practicing lawyer from the state of Missouri who had practiced law there for many years. He testified that he had used and become familiar with the statutes of the state of Missouri; that they were printed in three volumes numbered 1, 2 and 3. He identified a volume as No. 2 of the Missouri statutes for the year 1929, and testified that such volumes were used generally in the practice of law in that state.

With this foundation, the plaintiff offered certain sections of the statute which he had pleaded in his petition. They were admitted in evidence over the objection of defendants.

Section 20-1269, Comp. St. 1929, reads: "Printed copies in volumes of statutes, code, or other written law, enacted by any other territory or state, or foreign government, purporting or proved to have been published by the authority thereof, or proved to be commonly admitted as evidence of the existing law in the courts of tribunals of such territory, state or government, shall be admitted by the courts and officers of this state on all occasions, as presumptive evidence of such laws." It is true that foundation for the admission of the Missouri statute did not literally conform to the requirements of our statute. However, if there was a substantial compliance with the statute that would be sufficient.

In *Stuart v. Pederson*, 41 Utah, 308, 125 Pac. 395, it was held: "Under Comp. Laws 1907, sec. 3379, which provides that statutes or codes purporting to be published under the authority of another state proved to be commonly admitted in the tribunals of such state are admissible in this state as evidence of such law, proof that Mills' Annotated Code of Colorado, properly identified and in evidence, was used by lawyers in that state and used and cited by the supreme court, *held* to show that it was commonly admitted in the courts of Colorado as evidence of the written law of that state." We think the showing in that case is very similar to that in the instant case, and that, under the circumstances, where there is no contrary showing of any sort, the proffered evidence is sufficient to indicate that volume No. 2 of the statutes of Missouri was commonly admitted as evidence of existing law in the state of Missouri and was, therefore, properly admitted in evidence.

Defendants complain of alleged misconduct of counsel for the plaintiff in their attempt to show that defendant Kissinger was arrested, pleaded guilty, and paid a fine in Missouri on the charge of reckless driving, growing out of the accident in this case. The trial court excluded all of the

evidence upon this subject. It is further contended that counsel for plaintiff were guilty of misconduct in attempting to get before the jury, other than by cross-examination of the defendants, the fact that defendants carried liability insurance. It may be conceded that this was an improper way to proceed. The rule in this state at the time of the trial was that, in a personal injury action, defendant might be inquired of and answer whether he carried liability insurance. That question was later propounded to defendants, and it was shown that they did carry liability insurance, so that the attempt to get that question before the jury in another way could not have been prejudicial. A judgment will not be reversed by harmless error.

There is another reason why defendants cannot complain of the misconduct of counsel for plaintiff. Counsel for defendants knew of it at the time. If they were not satisfied that the jury could give defendants a fair trial, they had the opportunity of asking for a mistrial, but elected to proceed and take the chances of a favorable verdict. Defendants are not, therefore, in a position to complain of such misconduct.

The record fails to disclose error prejudicial to the defendants. Accordingly, the judgment is

AFFIRMED.