KATHERINE LONG, APPELLEE, V. CRYSTAL REFRIGERATOR COMPANY, APPELLANT.

277 N. W. 830

FILED FEBRUARY 18, 1938. No. 30112.

*Robins & Yost,* for appellant.

*Abbott, Dunlap & Abbott* and *John P. Corbett, contra.*

Heard before GOSS, C. J., EBERLY, DAY, PAINE, CARTER and MESSMORE, JJ., and MUNDAY, District Judge.

MUNDAY, District Judge.

This action was brought by the plaintiff, Katherine Long, to recover for personal injuries received by her on August 30, 1934, claimed as a result of the negligence of the defendant and appellant, Crystal Refrigerator Company, in the construction and maintenance of a monitor on its warehouse. The monitor was torn from the warehouse by a windstorm and carried to the home of the plaintiff, where she was injured.

The warehouse was owned and controlled by the defendant at Fremont, Nebraska. It was constructed in 1922 and was repaired in 1925, when, as the result of a snow-load, the roof sagged in places. The defendant claims the building was in first-class condition at the time of the storm, but the plaintiff claims it was defective at that time. The building was 208 feet long and 128 feet wide. The side walls of the building were 8 feet high with a general incline of about 46 feet to a point where the monitor wall starts at a height of 24 feet. The peak of the roof of the monitor was about 33 feet high. The building was built in 16-foot bays with the monitor over the 2 center bays, with

the side walls of the monitor about 4 feet high. The monitor extended the full length of the building. These side walls were windows with the exception of necessary wood to said windows; each window-frame was approximately 32 inches wide.

In her petition the plaintiff claimed that the defendant was the owner and in possession and full control of the building; that the monitor thereof was carelessly and negligently erected and maintained by the defendant, in that it was not secured to the other parts of the building so the same could withstand the pressure of such wind as is usually and ordinarily experienced in the locality where said building is located; that the defendant neglected to fasten the monitor to the remainder of the building by bolts, hooks or adequate fastenings; that the defendant failed to support the walls, roof and monitor by studding, rafters, joints and braces that were necessary; that continued pressure and weight on the various parts of said building gradually weakened it and the monitor and caused the building to become loose and insecure; that when said building gradually became in a loose and insecure position the defendant carelessly and negligently did not repair, strengthen and correct the defective condition; that the building was a public nuisance.

The plaintiff further set out in her petition that the defendant negligently and carelessly allowed about 50 per cent. of the windows to become broken and remain broken in said monitor, so as to allow the wind to blow in under its roof, and to exert pressure thereon from below; that on August 30, 1934, the plaintiff was the owner of a residence property in the city of Fremont, over a block from the premises of the defendant, and that on said date the wind of a velocity not unusual in the vicinity of said residence, and at a velocity which could reasonably have been anticipated by the defendant, blew off the monitor from said warehouse and deposited it upon the property of the plaintiff, injuring her and fracturing her third and fourth dorsal vertebræ.

For answer defendant denied each and every allegation not admitted, and admitted that on said date there was a windstorm which removed the monitor of the defendant's warehouse and carried it for a distance of approximately 400 feet. Defendant further alleged that the windstorm was extraordinary and unprecedented and could not have been anticipated in the construction, upkeep or care of the warehouse, and the injuries of the plaintiff were not the result of any negligence on the part of the defendant, and were not the result of any defect in material, workmanship, construction or maintenance, but the sole and proximate result of an act of God; that the monitor was erected and maintained at all times in a proper manner to withstand all wind which could reasonably have been anticipated, and that the defendant had no notice of any and there were no defects in workmanship, material, construction or maintenance of said building at any time. The reply was a general denial.

The trial of the issues was had to a jury, which returned a verdict in favor of the plaintiff and against the defendant in the sum of $1,925.

There are many errors assigned for reversal of the judgment of the trial court, but the principal errors may be briefly summarized in substance: (a) That the evidence of plaintiff should be rejected and disregarded as it is opposed to the unquestioned and unquestionable laws of nature that lie within the court's judicial knowledge, and is clearly in conflict with scientific principles as established by the laws of physics and mechanics; that the evidence essential to plaintiff's recovery was clearly disproved by the physical facts and conditions; that the damage was caused by a windstorm of unusual velocity for which the defendant was not liable; (b) that there were no visible or apparent defects of maintenance or construction of which the defendant was chargeable; (c) that the evidence in this case is insufficient to support a verdict in favor of the plaintiff and against the defendant; (d) that the plaintiff planned a deliberate statement to the jury to advise the

jury that defendant carried insurance covering the injury to plaintiff.

The defendant on this appeal does not complain of the instructions or any ruling on the evidence.

The evidence does not definitely disclose the weight of the monitor. One of plaintiff's witnesses stated the weight and later on cross-examination stated he was speaking of the maximum weight that it could be, but that he did not know the gauge of the steel used in the monitor. But even though the witness had given an estimate as to the weight of the monitor, the manner in which it was torn from the building, the kind and velocity of a wind that would convey the monitor such a distance, and all other facts and circumstances connected with the removal of the monitor to plaintiff's residence do not present such questions as to which the court could have taken judicial notice and knowledge of the scientific principles of physics or mechanics involved, and apply them as a matter of law and dispense with the jury.

The attorneys for the appellant with painstaking labor and much diligence have set out and briefed the facts of the case. Some of the facts as to the kind of a wind, the effects of the wind, the manner of construction, maintenance and repair of the building, and the character of plaintiff's injuries are not in dispute. Therefore, it is not necessary to set out all the evidence. The type of evidence and the dispute of much of it show that the physical facts were not such as the court could have passed upon without the assistance of the jury. Thus, Rodman Brown, chief engineer of the building department of Omaha, who, if not an expert witness, was a skilled witness, stated in part as follows: "The construction itself is very light. It only weighs a few pounds per square foot and when the wind once gets up under there and lifts the roof just like one of these gliders behind an airplane get going at a high velocity and they will coast. Those gliders will soar for a long period of time. This was carried up by this gust or sweep and just simply floated until finally another change

of the wind direction caused it to tilt and when it tilted it just fell on edge." ·

The appellant correctly contends that this court does not hesitate to set aside a verdict where the undisputed physical facts and conditions clearly disprove the evidence essential for the plaintiff to recover, or where the evidence supporting a judgment is clearly disputed by such physical facts and conditions. *Hessler v. Bellamy*, 128 Neb. 571, 259 N. W. 514. But this rule is applicable only when the physical facts and conditions can clearly be perceived by undisputed inferences from sensation.

This view we take of the above contention, therefore, makes the many authorities cited by appellant beside the point.

The appellant contends that all defects proved in the construction or maintenance were not visible but were latent, and that defendant is not responsible therefor. To this proposition also many authorities are cited, including *Kitchen v. Carter*, 47 Neb. 776, 66 N. W. 855, and *Knies v. Lang*, 116 Neb. 387, 217 N. W. 615.

In *Kitchen v. Carter, supra,* an action was brought to recover for negligence in procuring or allowing the use of poor, inferior material in the building of the third story of the annex of the Paxton Hotel in Omaha and its ·faulty and defective construction. The first paragraph of the syllabus is:

"The owner of real property in exercising his own tastes and inclinations as to the character of a building he will erect thereon, has no right to build and maintain a structure which, by reason of defects or inherent weakness either in material or construction, is liable to fall and do injury to an adjoining owner or the public."

In the opinion is a quotation from Wood, Nuisances, 140, sec. 109:

"While a man has a right to follow his own tastes and inclinations as to the style and character of the building that he will erect upon his own land, yet he has no right to erect and maintain there a building that is dangerous, by

reason of the materials used in, or the manner of its construction, or that is inherently weak or in a ruinous condition and liable to fall and do injury to an adjoining owner or the public. Such a building on a public street is a public nuisance, and is a private nuisance to those owning property adjoining it; and if the building falls and inflicts injury upon the adjoining owners or their property, or to any one who is lawfully in its vicinity, the owner is liable for all the consequences that ensue therefrom."

The plaintiff's evidence tended to show that the ventilator was not properly constructed and was placed at the top of a long, slanting, metal roof which sloped towards the walls and eaves of the building for about 46 feet and concentrated the pressure of the wind on its weakest point; that it was not properly fastened together; that about one-third of the windows on the west side of the monitor were out, so that the wind could come in; that it was necessary to construct against a wind pressure of from 25 to 40 pounds to the square foot, which would be a 60 to 90 mile wind. The greater part of these alleged facts was disputed by the defendant's evidence. Also, there was evidence that winds should have been anticipated by the defendant of a velocity which the evidence tended to show the velocity of the wind in the instant case was.

In a well-known text is the following language:

"If the occurrence of the intervening cause might reasonably have been anticipated, such intervening cause will not interrupt the connection between the original cause and the injury. Under such rule the ordinary forces of nature and condition of the weather, such as cold, heat, wind, or a rainstorm or snowstorm, which are usual at the time and place, are conditions which reasonably could have been anticipated, and will not relieve from liability the person guilty of the original negligent act or omission." 45 C. J. 934.

"The notice of defect or danger which is necessary in order to impose liability for negligence need not be actual, for negligently remaining ignorant of that which it is one's

duty to know has the same effect as actual knowledge and in such case one is said to have implied or constructive notice. That is to say, where a person is under a duty to discover or to know of a defect or danger, and could discover it by the exercise of due care, the condition having existed for a sufficient time to have enabled him to discover it, actual knowledge thereof is imputed to him so far as the question of his negligence is concerned, or, what amounts to the same thing in practical effect, his failure to discover the defect or danger is regarded as negligence." 45 C. J. 653.

There was evidence tending to show that the defendant had actual notice that many windows were out of the monitor for 30 days or more before the storm. At least this was such evidence, if believed, that notice might be inferred and would be constructive notice.

The defendant as owner of the building was not an insurer against an accident, but it is held to exercise reasonable care and prudence to keep it safe for the purpose for which it was constructed. When a defect in the maintenance of the building is shown, and it is also shown that the defect as it existed was known to the owner prior to the accident, or that it had existed for such a time prior thereto as to charge the proprietor with notice thereof and afford him reasonable opportunity to repair the defect, the owner is liable for the injury caused by such defect. *Broadston v. Beddeo Clothing Co.*, 104 Neb. 604, 178 N. W. 190.

Defendant contends that only persons on abutting property are entitled to recover damages for injury in cases of the nature similar to the instant case. We do not agree with this contention. While the usual case is for injury to persons on abutting property, it does not necessarily follow that such must be the fact in order to hold the owner for negligence in the construction and maintenance of a building. The building, if constructed and maintained negligently, was a private nuisance to persons owning property adjoining, and a public nuisance to others lawfully in the vicinity. If it was blown down on account of defendant's

negligence, the defendant was liable for all proximate consequences that ensued therefrom. If the negligent act was the proximate cause of plaintiff's injury, the defendant is liable in damages for the usual consequences of the act whether the particular consequences that followed the negligent act were actually contemplated or not. *Benedict Pineapple Co. v. Atlantic Coast Line R. Co.*, 55 Fla. 514, 46 So. 732.

Does the evidence support the verdict for the plaintiff and against the defendant? The defendant urges that the wind and not the negligence of the defendant was the cause of plaintiff's injury. Of course, the burden of proof was on the plaintiff to establish that the proximate cause of plaintiff's injury was the defendant's negligence. The defendant contends the fact that other buildings in the immediate vicinity were not damaged does not prove that it was not an unusual windstorm, as this court recognizes the freakishness with which storms act. As supporting this proposition it cites *George A. Hoagland & Co. v. Insurance Co.*, 131 Neb. 105, 267 N. W. 239. It is true that the opinion in this case states that the freakish character of wind and the way it shifts and rises in a particular part of the country are matters of common knowledge, but paragraph 2 of the syllabus in this case states: "Whether a wind has attained the proportions of a windstorm is a question of fact to be determined from the evidence." Paragraph 3 of the syllabus states that, when the evidence is in conflict on this question, it is for the jury to determine.

The owner of a building is not responsible for an act of God and is not an insurer of the safety of his premises. To this proposition the *Kitchen* case above was cited and cases from other jurisdictions. There is no dispute of this proposition. But whether or not the wind was an ordinary, usual wind, or an unusual wind and an act of God, or whether or not the injury was caused by an act of God concurring with the negligent acts of defendant were questions which were undoubtedly submitted to the jury correctly, as no complaint is made of the court's instructions, and

were all questions for the jury's determination. If the
windstorm was of such severity as to come within the
definition of an act of God, still the defendant would be
liable if his negligence concurred with an act of God. 45
C. J. 736. In *Davis v. Union P. R. Co.*, 99 Neb. 769, 157 N.
W. 964, the following language is used:

"In a suit for damages for personal injuries, an act of
God is no defense if defendant's negligence was a con-
current cause of plaintiff's injuries."

The jury viewed the premises in question and considered
the whole evidence under the instructions of the court. The
question of the proximate cause of plaintiff's injury was
for the jury's determination.

It is contended that the plaintiff did not suffer any in-
juries other than a bruising and shaking up in this acci-
dent, and that the plaintiff's pain and suffering were due
to anemia. There was professional testimony as to the
plaintiff's physical condition and also some lay testimony.
This, too, was for the jury to consider. The evidence is
examined and we think in every way supports the verdict
of the jury.

The appellant claims that the plaintiff carefully planned
a deliberate statement to the jury to advise the jury that
the defendant carried insurance covering the injury to the
plaintiff and that this was error entitling the defendant
to a new trial. It seems as though defendant's counsel
interrogated the plaintiff about a proof of loss she had
made out before an insurance adjuster on an insurance
policy covering windstorm damage. As a further cross-
examination of the plaintiff, the defendant's attorney pro-
duced a signed statement and asked the plaintiff if she had
not signed it, to which she answered 'she had. He also
asked her if the statement was not one which she had made,
to which she answered: "I do not think so." Plaintiff's
attorneys on permission were then given leave to examine
the plaintiff as to the statement and asked her: "How did
you happen to sign it?" She answered: "The only thing
I know is when that insurance man came out from Omaha

that day he had wrote down a lot of stuff. I was sick and he had asked me to sign it and I refused to sign it and he said, 'Wouldn't you rather sign it and get $1,500 than take it to the lawyers and get nothing?'" A little later the defendant's attorney moved that the answer be stricken, and later by another motion asked that the entire answer be stricken and the jury instructed to disregard it. The court sustained the defendant's motions and instructed the jury as follows: "Gentlemen of the jury, the answer to the last question you will be required to disregard that answer made by Mrs. Long." Apparently this satisfied the defendant's attorneys and the controversy regarding this testimony appeared to be closed. No motion was made by counsel for defendant for a mistrial or for any other action by the court with respect to it. The defendant identified the exhibit and showed the plaintiff the signature, and while it was not offered in evidence, it undoubtedly seemed reasonable to think that it would be so offered. When the plaintiff was asked as to whether or not it was her signature, it would follow that on redirect examination she would be permitted to bring out the circumstances surrounding the making of the statement which she had signed. In 70 C. J. 709, it is stated:

"It is proper on redirect examination to bring out the circumstances surrounding * * * or the making of a statement brought out on cross-examination."

Furthermore, the defendant should have made all objections it had to the statement or answer by the plaintiff. If the defendant intended to rely upon this answer as a basis for mistrial, it was incumbent upon it to make such objection and motion at the time. A party is not permitted to proceed with the trial without objection and speculate on the outcome of the jury's verdict, and, if unfavorable, contend that a mistrial should have been declared, when he did not ask for the same at the time. 4 C. J. 717; *Chamberlain v. Brown,* 25 Neb. 434, 41 N. W. 284; *Ellsworth v. City of Fairbury,* 41 Neb. 881, 60 N. W. 336; *Triplett v. Lundeen,* 132 Neb. 434, 272 N. W. 307.

Finding no error in the record, the judgment of the district court is

AFFIRMED.