MAUDE HARDING, APPELLEE, v. ARTHUR HOFFMAN, APPELLANT.

62 N. W. 2d 333

Filed January 29, 1954. No. 33406.

*Luebs & Elson,* for appellant.

*William P. Mullen* and *Harold A. Prince,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, Maude Harding, brought this action seeking to recover damages for personal injuries in one cause of action and on an assigned claim for hospital and medical expenses in another, which damages were alleged to

have been proximately caused by negligence of defendant, whose car collided at an intersection of county roads with one driven by plaintiff's son in which plaintiff was riding. Defendant for answer admitted the collision but denied generally and alleged that the accident was proximately caused by plaintiff's contributory negligence and by negligence of plaintiff's driver imputable to her, and that such negligence was the sole and only proximate cause of the accident. Neither party moved for directed verdict at conclusion of all the evidence. There was no evidence supporting defendant's allegations of contributory negligence or imputable negligence, so the issues of defendant's negligence and the negligence of plaintiff's driver, together with proximate cause, were submitted to the jury, whereupon it found for defendant and judgment was accordingly rendered. Thereafter, the trial court, without giving any particular reason therefor, sustained plaintiff's motion to set aside the verdict and judgment and grant a new trial. Therefrom defendant appealed, assigning that such action was erroneous. We affirm the action of the trial court.

Concededly, the method of procedure followed by the parties before this court in the case at bar, and the rules controlling the right and authority of the trial court to award or deny a new trial, are found in Greenberg v. Fireman's Fund Ins. Co., 150 Neb. 695, 35 N. W. 2d 772, which we reaffirmed and followed as late as Pongruber v. Patrick, 157 Neb. 799, 61 N. W. 2d 578. Those cases need no further discussion.

In the brief of plaintiff it is contended that the award of a new trial should be affirmed because the trial court erred prejudicially: (1) In the giving of instructions Nos. 1, 4, 6, 7, 8, and 13; (2) in failing to instruct on certain issues presented by the pleadings and evidence; (3) in the admission of certain evidence; and (4) that the verdict for defendant was contrary to law and not sustained by sufficient evidence. We sustain such contentions in part.

The parties involved will be designated as plaintiff, plaintiff's driver or son, and defendant. The accident happened on July 20, 1950, about 7:30 a. m. at a point where a north and south graveled county road, protected by a stop sign located 26 feet from the east edge of the north and south road, and an east and west graveled county road intersect each other at right angles. The traveled portion of the north and south road was 26 feet wide, and that of the east and west road was 24 feet wide. Both roads were dry and almost level at the point of accident. A shelter belt about one-sixteenth mile in length, extending from the intersection north along the east side of the north and south road, generally obscured the view both to the east from that road and to the north from the east and west road. Concededly, it was a hazardous intersection. Plaintiff's driver approached the intersection with his Plymouth sedan from the north on the right side of the north and south road, and defendant approached the intersection with his Chevrolet sedan from the east, driving near or a little south of the center of the east and west road. The cars collided in about the west one-third of the intersection. Plaintiff was riding in the back seat of her son's car. His wife was riding in the front seat with him. One of defendant's sons was riding in his car with him. All of the parties involved lived nearby and were familiar with the hazards of the intersection. Numerous photographs appear in the record which respectively depict the topography at and adjacent to the intersection, the location of the cars after the accident, and their physical condition. Otherwise the evidence was generally conflicting upon material issues.

Plaintiff's theory, supported by her testimony and that of her driver and his wife, was substantially as follows: That they drove south on the right side of the north and south road between 35 and 50 miles an hour. It was a bright, sunny morning, with good visibility. When about 50 or 60 feet from the intersection, they looked west and

east, whereupon plaintiff, who looked through a breach between the trees and saw defendant approaching from the east said, "look out." They all at that time saw defendant approaching from the east a little south of the center about 20 feet, or a car and one-half length east of the stop sign, at a speed of about 30 miles an hour. Plaintiff's driver then took his foot off the gas and slowed up to about 30 miles an hour, expecting that defendant, who was looking right at them all the time, would stop. However, he did not do so, but rather continued at the same speed right on into and across the intersection. Upon seeing that defendant was not going to stop, plaintiff's driver put on his brakes quickly and swung to the right, skidding 51 feet on the gravel, whereupon the left front corner of his car and the right front corner of defendant's car collided and both cars swung around, slapping their rear portions together. Defendant's car then went on some distance southwest into a ditch and stopped, headed west against the west bank thereof, just south of the southwest corner of the intersection. The car of plaintiff's driver stopped, headed more west than south in the intersection just off the grass in the southwest corner. Defendant then got out of his car and said, "I thought you were going to stop," and "he thought he could get his car through." In that connection, defendant in his testimony denied making the first statement, but did say, "I thought I was past."

It should be noted that on cross-examination some of the testimony of plaintiff's driver, his wife, and plaintiff was impeached in material respects. In that regard, plaintiff's driver admitted that in a deposition taken before trial and referring to defendant's car, he testified: "I first saw his car when I was 20 feet from his car" and "When I first saw the Hoffman car, the front end of his car was about 3 feet east of the stop sign. At that time my car was about 20 feet from the intersection." On cross-examination of the wife of plaintiff's driver, she admitted that in a statment given on July 21, 1950, she

said that she first saw defendant's car when "we were about 15 to 20 feet north of the intersection" and that he "was going west on the east-west road at a speed of about 30 to 40 miles an hour." On cross-examination of plaintiff it was disclosed that in her deposition taken before trial she testified as follows: Q. " 'How far was your car from the intersection, the north edge of the intersection when you saw the other car?' " A. " 'Oh, I think, we were almost in the intersection.' " * *. * Q. " 'Do you have an opinion how far your car was from the north edge of the intersection?' A. 'I don't know, we were almost in it.' " * * * Q. " 'When you first saw the other car, where was it?' A. 'I don't know, it was coming from the east. It was not up to the edge yet.' " * * * Q. " 'Where was each car when you first noticed the danger?' A. 'We were just entering the intersection and the other car was on the other side of the stop sign.' "

Defendant's theory, supported by his testimony and in part by testimony of a patrolman, a neighbor, and the impeaching evidence aforesaid, was substantially as follows: It had been cloudy earlier in the morning and both just before and at time of the accident it was foggy for a short time with visibility limited to about 200 feet. Defendant was driving west a little in from the north side of the traveled portion of the east and west road to avoid collision with cars making a turn to the left from the north. He stopped just short of the stop sign and looked north, but could see no cars from there. He then drove slowly to the east edge of the north and south road, and seeing no cars, went slowly on into the intersection. As he started on across he saw plaintiff's car coming out of the fog about 175 to 200 feet away, so watching it and thinking that he had plenty of time to get across, he stepped clear down on the throttle, speeding up to 12 or 15 miles an hour, and swung a little, but plaintiff's driver swung to the west, and at a point about two-thirds distant across the intersection the left corner of such driver's car collided

with defendant's car just in front of the right front door, throwing it toward the south. When defendant got out of his car he said, "I thought I was past," and plaintiff's driver said, which statement is undenied, "always take them broadside and nobody gets hurt."

After laying a proper foundation for the expression of an opinion with regard to the speed of plaintiff's car, defendant was asked what it was. Objection thereto "as no foundation" was properly overruled, whereupon defendant answered, "The length of time he come from that distance, he might have been going 60 or 75 miles an hour." Such answer remained in the record without objection or motion to strike, and on cross-examination of defendant, the following appears without objection: "Q. You fixed his speed between 60 and 70 miles an hour? A. Yes, sir. Q. When did you first decide after you saw him that he was going 60 to 70 miles an hour? A. After the accident. Q. Did you have any thought in your mind at the time you saw him in the first instance, he was going 60 or 70 miles an hour? A. No."

The patrolman, who testified as a witness for defendant, arrived at the scene of the accident about 8 a. m. before the cars were moved, and found marks in the intersection indicating approximately the point of collision. He measured the distance from that point to the respective cars to determine how far they moved after the accident, and concluded that plaintiff's car moved 20 feet and defendant's car moved 38 feet. He also testified that plaintiff's driver told him that he was driving about 50 miles an hour before the accident. At that time, he noticed no foggy condition and there was no conversation by the parties about it.

From the record as it comes to us we are unable to conclude as a matter of law that plaintiff's driver was traveling at a lawful rate of speed not to exceed 50 miles an hour or that the verdict was not supported by sufficient evidence, as plaintiff would have us do.

Therefore, the granting of a new trial is affirmed upon other grounds hereinafter discussed.

We first discuss instruction No. 8 because of its logical relation to instruction No. 1 hereinafter discussed, and conclude that both instructions were prejudicially erroneous. Instruction No. 8 undertook to recite the provisions of statute regulating and controlling the speed of motor vehicles involved at the time and place of the accident. To repeat its language would serve no purpose. It is sufficient for us to point out that the instruction did not include several material applicable statutory limitations and qualifications upon speed. In that connection, section 39-7,108, R. R. S. 1943, insofar as applicable here, provides: "(1) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing. * * * (3) The following speeds shall be prima facie lawful, but in any case when such speed would be unsafe, they shall not be lawful: * * * (c) sixty miles per hour between the hours of sunrise and sunset * * * upon any highway outside of a city or village. (4) The fact that the speed of a vehicle is lower than the foregoing prima facie limits shall not relieve the driver from the duty to decrease speed when approaching and crossing an intersection, * * * or when special hazards exist with respect to * * * other traffic or by reason of weather or highway conditions, and speed shall be decreased as may be necessary to avoid colliding with any * * * vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care; * * *."

In Hamblen v. Steckley, 148 Neb. 283, 27 N. W. 2d 178, this court concluded that a similar instruction, given under circumstances comparable with those at bar, was prejudicially erroneous. Therein it was held: "An instruction reciting the provisions of statutes regulating and controlling the speed of motor vehicles should include therein all the material applicable statutory limi-

tations and qualifications to enable the jury to observe and understand the duty of drivers at the time and place in question." In the opinion we said: "In the absence of certain other applicable statutory limitations and qualifications omitted from and not recited in the instruction, it appears that the language used would naturally lead the jury to erroneously assume that at the time and place of the accident defendant driver had a lawful right to drive at a rate of speed which was in fact unlawful. * * * The material applicable limitations and qualifications upon speed contained therein should have all been included in the instruction to enable the jury to observe and understand the duty of the drivers in approaching the intersection of narrow country roads at a blind corner where special hazards existed with respect to other traffic by reason of highway conditions." Such language has application in the case at bar wherein there was competent evidence from which it could have been reasonably concluded that plaintiff's driver was driving at an unlawful rate of speed and that defendant was driving at an unlawful rate of speed, to wit, 30 miles an hour without decreasing same while approaching and crossing the intersection where a known special hazard existed with respect to other traffic or by reason of weather or highway conditions.

In that connection also, plaintiff, among other things, alleged in her petition that defendant was negligent in that he drove his car "at a high and dangerous rate of speed, and at a rate of speed greater than was reasonable and proper having regard for the traffic and conditions of the road, and at a rate of speed such as to endanger the life and limb of the plaintiff and the safety of others upon said county road." As heretofore observed, there was competent evidence in the record supporting that allegation. However, instruction No. 1 erroneously omitted any submission of such issue to the jury. It simply recited an allegation: "That defendant failed to slacken the speed of his automobile," with-

out subsequently reciting in any instruction the material applicable statutory limitations and qualifications imposed upon him with regard to speed at the place and under the conditions presented.

Instruction No. 1 also summarized defendant's answer by enumerating his allegations of negligence by plaintiff's driver which were allegedly the sole proximate cause of the accident. Among them was submitted the allegation that plaintiff's driver "failed to turn left to avoid the collision." In that regard, plaintiff's theory was that her driver, confronted by an emergency created by defendant's negligence, slowed down, put on his brakes, and turned right in an effort to avoid collision. There is some evidence from which it could have been reasonably concluded that if plaintiff's driver had turned left he might have avoided a collision, but the instruction as given erroneously inferred that his duty to do so was absolute. No instruction was given defining an emergency or explaining its proper application with regard to the duty of plaintiff's driver if confronted by an emergency. It appears that the jury was thus permitted to speculate that under the circumstances plaintiff's driver owed the duty to turn left and avoid the accident and to find that plaintiff had no cause of action, even if it found that all of plaintiff's evidence was true.

We turn then to a discussion of instruction No. 4. It will be noted that the issue of plaintiff's contributory negligence, both direct and imputed, had been eliminated from the case for want of any evidence to support them. In Umberger v. Sankey, 151 Neb. 488, 38 N. W. 2d 21, this court held, under comparable circumstances, that: "In the absence of an issue of negligence by plaintiff or by a third person imputable to plaintiff, allegations in an answer denying that defendant was negligent and alleging that the accident and resulting damages were solely and proximately caused by the negligence of such third person is not an affirmative plea in avoidance of plaintiff's cause of action and imposes no burden of

proof upon defendant with relation thereto, but rather is one entirely consistent with and provable under the general issue."

Instruction No. 11 given by the trial court in the case at bar clearly stated the applicable rules with regard to concurrent negligence and proximate cause with relation thereto, after which it was said: "but if you find that the defendant driver was not negligent or that the sole proximate cause of the plaintiff's injury was the negligence of the driver of the car in which she was riding, then your verdict would be for the defendant."

Instruction No. 4, as given by the trial court, imposed the burden of proof upon defendant to prove by a preponderance of evidence that plaintiff's driver was negligent in one or more of the particulars alleged by defendant, and that such negligence was "the proximate cause" of the collision, instead of saying "the sole proximate cause." As indicated in Shiers v. Cowgill, 157 Neb. 265, 59 N. W. 2d 407, operative conversely here, if there was any error in using the words "the proximate cause" instead of "the sole proximate cause" it was favorable to plaintiff by imposing an improper burden upon defendant. While the instruction was erroneously given it could not have been prejudicial to plaintiff. In that connection, instruction No. 6 was correct in every respect.

Instruction No. 7 given by the trial court attempted to concisely summarize the rules promulgated and reaffirmed in Borcherding v. Eklund, 156 Neb. 196, 55 N. W. 2d 643, but erroneously neglected to tell the jury in such instruction or any other instruction that defendant's duty was to stop at a point where he could see and to see approaching vehicles in plain sight on the favored highway, unless some reasonable excuse for not seeing is shown, or that if defendant saw the approaching car it was his duty not to test an obvious danger by moving from a place of safety into its path as indicated in Whitaker v. Koegh, 144 Neb. 790, 14 N. W. 2d 596, or that a

person traveling a favored highway protected by a stop sign of which he has knowledge may ordinarily assume that oncoming traffic will obey it as indicated in Dale v. Omaha & C. B. St. Ry. Co., 154 Neb. 434, 48 N. W. 2d 380. See, also, Simcho v. Omaha & C. B. St. Ry. Co., 150 Neb. 634, 35 N. W. 2d 501; Bergendahl v. Rabeler, 133 Neb. 699, 276 N. W. 673. Also, in that portion of instruction No. 7 purporting to absolve defendant from negligence, the instruction said: "he is not chargeable with negligence in attempting to cross, unless he does something, or fails to do something that an ordinarily prudent and cautious person would not *not* do under similar circumstances." It should have read: "unless he does something that an ordinarily prudent and cautious person *would not do* or fails to do something that an ordinarily prudent and cautious person *would do* under similar circumstances." Obviously, such portion as given was confusing in that it erroneously predicated negligence upon a double negative.

In that connection, also, this court said in Murray v. Pearson Appliance Store, 155 Neb. 860, 54 N. W. 2d 250, citing numerous authorities: " 'On principle it would appear that the existence or presence of smoke, snow, fog, mist, blinding headlights or other similar elements which materially impair or wholly destroy visibility are not to be deemed intervening causes but rather as conditions which impose upon the drivers of automobiles the duty to assure the safety of the public by the exercise of a degree of care commensurate with such surrounding circumstances. * * *

" ' "* * * where the vision of the driver of an automobile is obscured whether by the lights of an approaching car, fog, smoke, or for any other reason, it is his duty to stop until visibility is restored, or to reduce his speed and have his car under such control that he can stop immediately if necessary. * * * " ' "

Also, in Borcherding v. Eklund, *supra,* this court reaffirmed that: "It is the duty of the court to instruct

the jury upon the issues presented by the pleadings and evidence whether requested to do so or not." Nevertheless, the trial court gave no instruction whatever upon that important and material issue presented by the pleadings and evidence. Failing to do so was prejudicially erroneous.

Instruction No. 13 told the jury in substance that the mere fact that an accident happened and plaintiff sustained damages therein would not alone be sufficient to justify an award of damages to her against defendant, or in finding that either of the drivers were guilty of negligence because accidents may happen without the negligence of any person, and thus be inevitable in their nature and not such as to be the basis of any recovery. Without citing any authority in point, plaintiff argued that the instruction was prejudicially erroneous because not raised by the pleadings or presented by the evidence. In Bonacci v. Cerra, 134 Neb. 476, 279 N. W. 173, this court concluded that where in an action to recover for personal injuries the jury is properly instructed upon the burden of proving the negligence charged as a proximate cause of the injury, then the issue of unavoidable accident is sufficiently submitted, and ordinarily it is not reversible error to either give or refuse an instruction on that issue. We therefore conclude that instruction No. 13 could as well have been omitted, but it was not prejudicially erroneous.

A meteorologist at the Grand Island Airport weather bureau, 15 miles from the point of accident, was permitted by the trial court, over appropriate objections by plaintiff, to testify at length "for what it is worth" with reference to weather and fog conditions at Grand Island, as shown by weather bureau records there at or about the time of the accident. Such evidence was adduced by defendant purportedly to support his contention that there was a fog which obscured the view of the drivers and to refute plaintiff's evidence that it was a bright, sunny morning at the time and place of the acci-

dent. Upon foundational inquiry by both counsel and the court, such witness frankly stated that he would be unable to state from the records that the weather conditions at the time and place of the accident would be the same as those at Grand Island, 15 miles away. In other words, he admitted that he could not tell from the records whether or not there was a fog at the time and place of the accident. In reply to a hypothetical question, including other physical elements, he said: "That is a hard question to answer. With reasonable certainty, I would say no. Because there is no—you are not certain. I would say there is a possibility of it. As far as being positive of it in my own mind, I have many, many doubts on that." We conclude that the evidence of such witness was incompetent, irrelevant, and immaterial, and as such was erroneously admitted.

For the reasons heretofore stated, we conclude that the judgment of the trial court setting aside the verdict and judgment and granting a new trial, should be and hereby is affirmed.

AFFIRMED.