DONALD GRANGER, BY CHARLES E. GRANGER, HIS FATHER AND NEXT FRIEND, APPELLANT, V. TOM BYRNE ET AL., APPELLEES.

69 N. W. 2d 293

Filed March 4, 1955. No. 33617.

*Mecham, Stoehr, Mecham & Hills,* for appellant.

*Gross, Welch, Vinardi & Kauffman,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff Donald Granger, a minor, by Charles E. Granger, his father and next friend, brought this action against defendants Tom Byrne and John P. Byrne, seeking in two causes of action to recover damages for personal injuries sustained in a collision of automobiles. The accident occurred on October 15, 1952, about 8:30 p. m. at the intersection of Seventy-second and Dodge Streets, west of Omaha. At that time, Donald Granger, 15 years of age, hereinafter called plaintiff, was a guest passenger in a 1932 or 1934 Plymouth coupé, hereinafter designated as the Clark car, driven by James W.

Clark, 16 years old, hereinafter called plaintiff's driver. At the same time Tom Byrne, 19 years of age, hereinafter called defendant, was driving a 1942 Ford coupé, a family car belonging to his father, defendant John P. Byrne. After trial upon and submission of the issues of alleged negligence and damages to a jury, it returned separate verdicts finding for defendants, and judgment was rendered thereon.

Plaintiff's motion for new trial was overruled and he appealed, assigning and arguing in substance: (1) That the verdicts were not sustained by the evidence; (2) that the trial court erred in failing to admit evidence offered by plaintiff which prevented him from having a fair trial; and (3) that the trial court erred in failing to instruct the jury upon plaintiff's theory of the case and in giving instruction No. 10. We conclude that the assignments should not be sustained.

At point of accident Dodge Street, a paved, almost level, four-lane highway, 42 feet wide, extends east and west to and from Omaha. It has two lanes south of the center line for eastbound traffic, and two lanes north of the center line for westbound traffic. Two outside lanes are each made of concrete, 11 feet wide. Two inside or passing lanes are each 10 feet wide and made of brick. There is a marked center street line between them. At point of accident, Seventy-second Street, a paved, concrete, almost level two-lane street, 18 feet wide with a marked center line, extends north and south intersecting Dodge Street. Each corner of the intersection has a 50-foot radius curve. It was stipulated in the presence and hearing of the jury that east of the center line of Seventy-second Street was within the city of Omaha, and that west of the center line of Seventy-second Street was outside the city but in Douglas County. It was likewise stipulated in the presence and hearing of the jury: "* * * that the legal speed limit on Dodge Street east of the center of 72nd is 35 miles per hour, and that the legal speed limit on Dodge Street

west of the center of 72nd is 45 miles per hour." Concededly, the collision occurred west of the center line of Seventy-second Street, outside the city limits. Therefore, by analogy from Tempero v. Adams, 153 Neb. 331, 44 N. W. 2d 604, the maximum legal speed limit at point of accident was 45 miles per hour.

Traffic at the intersection was controlled by automatic traffic lights. There were filling stations on the northeast, southeast, and southwest corners, but there was nothing except a traffic signal light on the northwest corner. The intersection was well lighted, and the view of those approaching from the east and west was unobstructed. Lights of both cars were turned on.

There is competent evidence from which it could have been reasonably concluded that plaintiff's driver approached the intersection from the west on a green light while driving in his own north lane for eastbound traffic nearest the center of Dodge Street; that some distance, 100 to 200 feet from and up to the intersection, plaintiff's driver made a proper hand signal for a left-hand turn north into Seventy-second Street; that during the last 5 or 10 feet he slowed up, angled slightly northeast, and stopped south of the center line of Dodge Street and about 4 feet west of the center line of Seventy-second Street; that defendant approached from the east, driving a distance of about 150 feet from the intersection in plaintiff's lane, south of the center line of Dodge Street, without keeping a proper lookout, at a speed of 45 miles an hour; and that just before the collision he swerved to the right, but the left front fender of defendant's car struck the right front fender of Clark's car, turning it around and throwing plaintiff out upon the pavement, from which he suffered personal injuries and damages.

On the other hand, it could have been reasonably concluded, which the jury evidently did, that just prior to the accident, as defendant approached the intersection from the east on a green light, at about 30 miles an

hour, driving in his own south lane north of the center line of Dodge Street, he noticed the Clark car driving toward the east but south of the center line of Dodge Street in his own north lane for eastbound traffic. Defendant heard no horn signal, and looked but saw no hand signal given by plaintiff's driver or flash of blinker lights indicating that he was going to turn left. Defendant took his foot off the accelerator and slowed up a little as he came into the intersection, but just before he approached the Clark car west of the center line of Seventy-second Street, it turned suddenly into the path of defendant's car, whereupon defendant swerved to the right to avoid collision, but the left front fender of his car and the right front fender of the Clark car collided in defendant's driving lane at a point 3 or 4 feet west of the center line of Seventy-second Street and north of the center line of Dodge Street. The impact forced Clark's car around in a northwesterly direction so that after the accident it stopped, headed in a northerly direction, cross-wise of Dodge Street, with a little more than half of it north of the center line thereof, and with all of it several feet west of the center line of Seventy-second Street.

After the impact defendant's car proceeded to the northwest corner of the intersection and stopped at the curb. There were visible skid marks on the pavement extending toward the northwest from point of impact directly up to within a few feet of the rear tires on defendant's car. The skid marks on the left side were much heavier and more clearly visible. Oral evidence, supported by photographs, taken by police officers a short time after the accident, before either car was moved, demonstrated the skid marks and the respective positions of the cars after the accident.

It is elementary that when evidence with relation to negligence is conflicting or such that minds may reasonably reach different conclusions therefrom with regard to its existence, the issue should be submitted

to the jury for its determination. Further, as held in Bolio v. Scholting, 152 Neb. 588, 41 N. W. 2d 913: "In determining the sufficiency of evidence to sustain a verdict it must be considered most favorably to the successful party, any controverted fact resolved in his favor, and he must have the benefit of inferences reasonably deducible from it.

"The verdict of a jury, based on conflicting evidence, will not be disturbed unless clearly wrong." In the light of such rules and the evidence heretofore set forth, we conclude that the issues of negligence were questions for the jury and that the verdicts of the jury were amply supported by competent evidence. Therefore, the first assignment has no merit.

After the accident, a young lawyer associated in the same firm with plaintiff's counsel, was employed to investigate the accident. In such capacity, while he was accompanied by an official court reporter, defendant Tom Byrne made a statement with relation to the circumstances of the accident which was transcribed by the reporter. At the trial, the reporter was ill and could not be present. In that connection, plaintiff argued that he was surprised and could not lay a foundation for admission of the statement, thus he did not have a fair trial. The record discloses, however, that plaintiff proceeded with the trial without making any application for a continuance or delay of the trial, and as a matter of fact, he never even offered the statement itself in evidence. As early as Goracke v. Hintz, 13 Neb. 390, 14 N. W. 379, this court concluded that when a party learns that an important witness is absent but nevertheless he proceeds with the trial and takes the chance of a verdict without seeking a continuance or delay, he is not entitled to new trial upon the ground of accident or surprise. The record also discloses that plaintiff was given ample opportunity to cross-examine defendant, and also called as his own witness the young lawyer who was present when defendant's statement was taken.

Such witness was permitted by the trial court to testify at length that relevant admissions were made in his presence by defendant. Plaintiff's contention has no merit.

Plaintiff also argued that in connection with the examination of such witness, defendant's counsel was guilty of misconduct prejudicial to plaintiff's rights by the use of improper language in the making of objections. The record discloses that plaintiff's counsel did not ask for a mistrial at the time of such alleged misconduct. or thereafter during the trial, but took the chances of a favorable verdict. He cannot now complain. The applicable and controlling · rule is that one may not complain of alleged misconduct of adverse counsel if, with knowledge of such alleged misconduct, he does not ask for a ·mistrial but consents to take the chances of a favorable verdict. Triplett v. Lundeen, 132 Neb. 434, 272 N. W. 307; Long v. Crystal Refrigerator Co., 134 Neb. 44, 277 N. W. 830; Dunn v. Omaha & C. B. St. Ry. Co., 139 Neb. 765, 298 N. W. 741; In re Estate of House, 145 Neb. 670, 17 N. W. 2d 883. The second assignment should not be sustained.

Plaintiff's petition alleged that defendant Tom Byrne was negligent, to wit: (a) In failing to keep a proper lookout; (b) in failing to accord the car in which plaintiff was a passenger one-half of the useable portion of the highway; (c) in driving said car upon the wrong or left side of the highway; (d) in driving said car at a high and unlawful rate of speed,. to wit: 45 miles per hour, contrary to the statutes of the State of Nebraska; and (e), (f), and (g), in failing to slow, swerve, or stop said car and thus avoid colliding with the car in which plaintiff was riding. Instruction No. 1 given by the trial court submitted all of such allegations. However, with reference to plaintiff's allegation (d) it simply said: "In driving said Ford car at a high and unlawful rate of speed" without specifically including the words "to-wit: 45 miles per hour, contrary to the Statutes of the

State of Nebraska," which had been stipulated as the legal speed limit at point of accident.

In that connection, the only evidence directly adduced by plaintiff with regard to defendant's speed was that he was driving "at 45 or 50 miles per hour" as he came towards plaintiff immediately prior to the accident. That testimony is only evidence that defendant's motor vehicle was traveling not to exceed 45 miles per hour. Rich v. Eldredge, 106 N. J. Law 181, 147 A. 384.

Instructions Nos. 4 and 5, given by the trial court, properly defined preponderance of evidence, proximate cause, negligence, ordinary care, and intersection. Instruction No. 8, correctly and favorably to plaintiff, instructed upon the question of imputed negligence. It then properly stated and applied rules of law with relation to concurring negligence and proximate cause applicable in guest cases.

Instruction No. 9 given by the trial court then properly set forth that it was: "* * * the general duty of the driver of an automobile that he should keep a reasonably careful lookout and have his car under such reasonable control as will enable him to avoid collision with other vehicles, assuming that the drivers thereof will exercise due care.

"Reasonable control by drivers of motor vehicles is such as will enable them to avoid collision with other vehicles operated without negligence in streets or intersections."

Instruction No. 10 then said: "To assist you in determining the issue of negligence in this case, the applicable Statutes of the State of Nebraska provide, in substance, as follows:

"No person shall operate a motor vehicle on any highway outside of a city or village at a rate of speed greater than is reasonable and proper, having regard for the traffic and use of the road and the condition of the road, nor at a rate of speed such as to endanger the life or limb of any person.

"In crossing an intersection of highways, the driver of a vehicle shall at all times cause such vehicle to travel on the right half of the highway unless such right half is obstructed or impassable.

"Drivers of vehicles proceeding in opposite directions shall pass each other to the right, each giving to the other at least one half of the main traveled portion of the roadway as nearly as possible.

"The driver of a vehicle when intending to turn to the left at an intersection shall approach such intersection in the lane for traffic to the right of and nearest to the center line of the highway, and in turning shall pass beyond the center of the intersection, passing as closely as practicable to the right thereof before turning such vehicle to the left. The center of the intersection means the meeting point of the medial lines of the highways intersecting one another.

"The driver of any vehicle traveling at an unlawful speed shall forfeit any right of way which he might otherwise lawfully have. The driver of a vehicle approaching but not having entered an intersection shall yield the right of way to a vehicle within such intersection and turning therein to the left across the line of travel of such first mentioned vehicle, provided the driver of the vehicle turning left has given a plainly visible signal of intention to turn.

"You are instructed that the violation of any of said Statutes is not in and of itself negligence as a matter of law, but the violation thereof is evidence of negligence which you should consider together with all the other evidence in the case to determine whether or not negligence has been proven."

It thus appears without question that plaintiff's theory of the case was fully and fairly presented to the jury by appropriate instructions, unless, as argued by plaintiff, the first paragraph of instruction No. 10 did not do so.

In that connection, plaintiff argued that such first

paragraph of instruction No. 10 erroneously failed to include applicable and material statutory limitations and qualifications contained in section 39-7,108, R. R. S. 1943. He cites and relies upon Hamblen v. Steckley, 148 Neb. 283, 27 N. W. 2d 178, and Harding v. Hoffman, 158 Neb. 86, 62 N. W. 2d 333. However, we believe that such cases are entirely distinguishable from that at bar. It will be recalled plaintiff alleged that defendant was driving "45 miles per hour, contrary to the Statutes of the State of Nebraska." Plaintiff did not allege that defendant had violated any speed ordinance of the city of Omaha. Plaintiff stipulated in the presence and hearing of the jury that 45 miles per hour was the legal speed limit. Further, he adduced no evidence of speed except that defendant was driving 45 miles per hour. The accident concededly happened outside the city limits, so that no city ordinance had any application. In any event, plaintiff tendered no instruction covering the subject matter about which he now complains.

In Krepcik v. Interstate Transit Lines, 154 Neb. 671, 48 N. W. 2d 839, this court said: "The provision in section 39-7,108, R. S. Supp., 1949, that 'No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing' is the basic speed rule. Other provisions following in the section are specific speed restrictions based on the existence of the fact situation or situations mentioned in the act. Folken v. Petersen, 140 Neb. 800, 1 N. W. 2d 916; Tews v. Bamrick, 148 Neb. 59, 26 N. W. 2d 499; Hamblen v. Steckley, 148 Neb. 283, 27 N. W. 2d 178." Clearly, the first paragraph of instruction No. 10 gave the basic speed rule and even more.

In Hamilton v. Omaha & C. B. St. Ry. Co., 152 Neb. 328, 41 N. W. 2d 139, this court said: "The next assignment (No. 24) charges that the court erred in refusing to give a tendered instruction embodying parts of section 39-7,108, R. S. Supp., 1949. The following from the

instruction was proper on the record and should have been given: No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing. Thurow v. Schaeffer, 151 Neb. 651, 38 N. W. 2d 732.

"The remainder of the instruction relates to the rate of speed of an automobile in a residence district of a city. The statute provides that the rate shall be 25 miles an hour unless a higher rate is specifically permitted by ordinance of a city or village. No information was given on the trial as to whether or not the statutory rate or one fixed by ordinance of the city of Omaha was applicable, hence it was not error to refuse to give this part of the instruction." Also, in Tews v. Bamrick, 148 Neb. 59, 26 N. W. 2d 499, this court held: "Under the laws of this state the lawfulness of the speed of a motor vehicle, within the limits fixed by law, is determined by the further test of whether the speed was greater than was reasonable and prudent under the conditions then existing." The trial court complied with the foregoing rules in the case at bar.

In Thurow v. Schaeffer, 151 Neb. 651, 38 N. W. 2d 732, this court held: "The trial court has the duty to instruct the jury on issues presented by the pleadings and evidence, whether requested to do so or not, and a failure so to do constitutes prejudicial error.

"Where the charge to a jury in a particular respect contains a correct general statement of the law error cannot be predicated on a failure to give a more specific instruction in the absence of a request therefor." See, also, Plumb v. Burnham, 151 Neb. 129, 36 N. W. 2d 612.

As recently as Peake v. Omaha Cold Storage Co., 158 Neb. 676, 64 N. W. 2d 470, this court reaffirmed that: "Instructions are to be considered together, to the end that they may be properly understood, and, if as a whole they fairly state the law applicable to the evidence when so construed, error cannot be predicated on the giving thereof."

In the light of the foregoing rules and the evidence, facts, and circumstances presented in this case we conclude that instruction No. 10 was not prejudicially erroneous. We are convinced that the jury could not have been confused or misled in any manner with regard to issues as presented to them for their determination. The third assignment should not be sustained.

For reasons heretofore stated, the judgment of the trial court should be and hereby is affirmed.

AFFIRMED.