CHARLES TERRENCE EGENBERGER, A MINOR, BY AND THROUGH
HIS FATHER AND NEXT FRIEND, CHARLES EGENBERGER,
APPELLEE, V. NATIONAL ALFALFA DEHYDRATING AND
MILLING COMPANY, A CORPORATION, ET AL.,
APPELLANTS.

83 N. W. 2d 523

Filed May 31, 1957.　No. 34102.

*Maupin, Dent, Kay & Satterfield* and *William E. Morrow, Jr.,* for appellants.

*Smith Brothers, Beatty, Clark, Murphy & Morgan, Donald W. Pederson,* and *Frank E. Piccolo, Jr.,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, Charles Terrence Egenberger, a minor, brought this action by his father and next friend, against defendants, National Alfalfa Dehydrating and Milling Company, a corporation, and Leon A. Turner, employed by the corporation as a truck driver, seeking to recover damages for personal injuries alleged to have been proximately caused by negligence of defendants while the truck driver was operating the corporation's power wagon and attached alfalfa trailer in the regular course of his employment.

Plaintiff's petition alleged in substance that on August

29, 1954, at about 11:40 p. m., while he was a passenger in the left rear seat of a 1947 Pontiac sedan driven by another in an easterly direction on the right side of a graveled county road, defendant truck driver, while operating defendant corporation's red 1947 Dodge power wagon pulling a dark green four-wheel trailer loaded with chopped green alfalfa, negligently collided with the car in which plaintiff was riding, which proximately caused plaintiff to suffer painful permanent personal injuries, damages, and disability, requiring repeated hospitalization and extensive surgical and medical treatment. The alleged negligence of defendants, as important here, was as follows: (1) That defendant driver negligently failed to give the car in which plaintiff was riding one-half of the main-traveled portion of the roadway, as nearly as possible; (2) that he negligently operated defendant's trailer at night without displaying a clearance light at the left front edge of the trailer; and (3) that he negligently failed to exercise reasonable control over the operation of the power wagon and trailer.

The joint answer of defendants admitted the occurrence of a collision at about the time and place alleged between the car in which plaintiff was riding and the vehicles owned by defendant corporation, then operated by its driver while in the regular course of his employment. Such answer then denied generally and alleged that the sole proximate cause of the collision and any resulting injuries and damages suffered by plaintiff was the contributory negligence of plaintiff and the negligence of plaintiff's driver. In that connection, the evidence failed to establish that plaintiff was guilty of any contributory negligence, and no complaint is here made that such issue was not submitted to the jury. The alleged negligence of plaintiff's driver as important here was: (1) That he failed to keep a proper lookout, and (2) failed to have his car under reasonable control while driving on the wrong side of the road

around a curve at an excessive rate of speed after theretofore engaging in the consumption of intoxicating liquor. Plaintiff's reply was a general denial.

The cause was tried to a jury and defendants' motions to direct a verdict or dismiss, made at conclusion of plaintiff's evidence, and at conclusion of all the evidence, upon the ground that there was insufficient competent evidence adduced to support a verdict in favor of plaintiff and against defendants, were overruled. Thereafter, upon submission of the cause to the jury, it returned a verdict for plaintiff and against defendants, and fixed the amount of plaintiff's recovery at $40,000. Subsequently, defendants' motion for judgment notwithstanding the verdict, or in the alternative for new trial, was overruled, and judgment was rendered upon the verdict. Therefrom defendants appealed to this court, assigning in substance that the trial court erred as follows: (1) In failing to sustain their motion for directed verdict or dismissal and in failing to sustain their motion for judgment notwithstanding the verdict or for new trial; (2) in excluding certain evidence and in permitting plaintiff's counsel during final arguments to use and display to the jury exhibit No. 29 theretofore excluded from evidence; (3) in refusing and failing to give and in giving certain instructions; (4) in denying defendants' request to have all of plaintiff's final arguments officially reported; and (5) in failing to set aside the verdict as clearly exorbitant. We sustain assignment No. 3 in part, reverse the judgment, and remand the cause for new trial, which requires no determination of assignment No. 5. A disposition of the other assignments requires an examination of the record and the application of certain statutes and established rules of law thereto.

"A motion for directed verdict or for judgment notwithstanding the verdict must be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion

is directed. Such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence." Colvin v. Powell & Co., Inc., 163 Neb. 112, 77 N. W. 2d 900.

"In an action for damages for negligence the burden is on the plaintiff to show that there was a negligent act or omission by the defendant and that it was the proximate cause of plaintiff's injury or a cause which proximately contributed to it.

"Negligence is a question of fact and may be proved by direct or circumstantial evidence.

"Proof of negligence is sufficient if the facts and circumstances proved, together with the reasonable inferences which may be drawn therefrom, shall indicate with reasonable certainty the negligent acts of which complaint is made." Hansen v. Henshaw, 163 Neb. 191, 79 N. W. 2d 15. See, also, Davis v. Dennert, 162 Neb. 65, 75 N. W. 2d 112; Shields v. County of Buffalo, 161 Neb. 34, 71 N. W. 2d 701.

"In the absence of an issue of negligence by plaintiff or by a third person imputable to plaintiff, allegations in an answer denying that defendant was negligent and alleging that the accident and resulting damages were solely and proximately caused by the negligence of such third person is not an affirmative plea in avoidance of plaintiff's cause of action and imposes no burden of proof upon defendant with relation thereto, but rather is one entirely consistent with and provable under the general issue." Harding v. Hoffman, 158 Neb. 86, 62 N. W. 2d 333.

"Where the independent tortious acts of two persons combine to produce an injury indivisible in its nature, either tortfeasor may be held for the entire damage— not because he is responsible for the act of the other, but because his own act is regarded in law as a cause of the injury." Stark v. Turner, 154 Neb. 268, 47 N. W. 2d 569. See, also, Bergendahl v. Rabeler, 133 Neb. 699,

276 N. W. 673, wherein we held: "When separate and independent acts of negligence by different persons combine to produce a single injury, each participant is liable for the resulting damages, though one of them alone might not have caused the injury.

"Where the negligence of the driver of an automobile in which plaintiff is riding as a passenger is the sole proximate cause of a collision in which plaintiff is injured, plaintiff cannot recover from a third person for such injury." See, also, Burhoop v. Brackhan, *ante* p. 382, 82 N. W. 2d 557.

"As a general rule it is negligence as a matter of law for a motorist to drive an automobile on a highway in such a manner that he cannot stop in time to avoid a collision with an object within the range of his vision.

"The basis of this rule is that a driver of an automobile is legally obligated to keep such a lookout that he can see what is plainly visible before him and that he cannot relieve himself of that duty. And, in conjunction therewith, he must so drive his automobile that when he sees the object he can stop his automobile in time to avoid it.

"Exceptions have been recognized to this general rule where the object or obstruction or depression is the same color as the roadway and for that reason, or for other sufficient reasons, cannot be observed by the exercise of ordinary care in time to avoid a collision." Guerin v. Forburger, 161 Neb. 824, 74 N. W. 2d 870.

"The violation of a statute the design of which is to protect the safety of people in the use of public highways is evidence of negligence." Segebart v. Gregory, 156 Neb. 261, 55 N. W. 2d 678.

"The violation of statutes regulating the use and operation of motor vehicles upon the highway is not negligence per se, but evidence of negligence, which may be taken into consideration with all the other facts and circumstances in determining whether or not negligence is established thereby, and where the evidence is such

that reasonable minds may draw different conclusions therefrom, the questions of negligence * * * are for the jury." Plumb v. Burnham, 151 Neb. 129, 36 N. W. 2d 612.

In Barney v. Adcock, 162 Neb. 179, 75 N. W. 2d 683, we held that: "A traveler on a highway is required to exercise reasonable care for the safety of others thereon.

"What is reasonable care does not permit of definitive statement applicable to all cases but the presence or absence of reasonable care must be determined by the facts and circumstances of each case.

"If there is evidence adequate to justify a finding for the party who has the burden of proof, in an action triable to a jury, the trial court may not disregard the proof and decide the case as a matter of law."

Further, "The lawfulness of the speed of a motor vehicle within the prima facie limits fixed is determined by the further test of whether the speed was greater than was reasonable and prudent under the conditions then existing.

"The violation of an ordinance or statute requiring automobiles and other vehicles to drive to the right of the center of the highway does not constitute negligence per se, or as a matter of law; but whether or not such violation constituted negligence is a question for the jury under proper instructions." Davis v. Dennert, *supra.*

"In order for physical facts to be sufficient to warrant a directed verdict in an automobile collision case, they must conclusively demonstrate that the collision out of which the injuries arose was not caused by any negligence on the part of the party making the motion.

"Where there is a reasonable dispute as to what the physical facts show, the conclusions to be drawn therefrom are for the jury." Young v. Stoetzel, 159 Neb. 624, 68 N. W. 2d 186.

Contrary to defendants' contention, there is a reasonable dispute as to what the physical facts show and

they do not conclusively demonstrate that the collision out of which plaintiff's injuries arose was not caused by any negligence of defendants.

"Proximate cause, as used in the law of negligence, is that cause which in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the accident could not have happened.

"A party is only answerable for the natural, probable, reasonable, and proximate consequences of his acts; and where some new efficient cause intervenes, not set in motion by him, and not connected with but independent of his acts and not flowing therefrom, and not reasonable in the nature of things to be contemplated or foreseen by him, and produced the injury, it is the dominant cause.

"If the original negligence is of a character which, according to the usual experience of mankind, is liable to invite or induce the intervention of some subsequent cause, the intervening cause will not excuse it, and the subsequent mischief will be held to be the result of the original negligence." Kroeger v. Safranek, 161 Neb. 182, 72 N. W. 2d 831. See, also, Colvin v. Powell & Co., Inc., *supra*.

"Although the question of proximate cause is ordinarily for the determination of the jury, where, upon the evidence produced, only one inference can be drawn, it is for the court to declare whether a given act or series of acts is the proximate cause of the injury." Bergendahl v. Rabeler, *supra*.

However, in a jury case involving issues of negligence and proximate cause, where different minds may reasonably draw different conclusions or inferences from the evidence adduced, or if there is a conflict in the evidence, such issues must be submitted to the jury for its determination, and its verdict based thereon will not be disturbed unless clearly wrong. Colvin v. Powell

& Co., Inc., *supra;* Granger v. Byrne, 160 Neb. 10, 69 N. W. 2d 293.

The following statutes are pertinent and applicable in the case at bar. Section 39-746, R. R. S. 1943, provides: "Upon all highways of sufficient width, except upon one-way streets, the driver of a vehicle shall drive the same upon the right half of the highway and shall drive a slow moving vehicle as closely as possible to the right-hand edge or curb of such highway, unless it is impracticable to travel on such side of the highway and except when overtaking and passing another vehicle, subject to the limitations applicable in overtaking and passing set forth in section 39-748."

Section 39-748, R. R. S. 1943, provides: "Drivers of vehicles proceeding in opposite directions shall pass each other to the right, each giving to the other at least one half of the main traveled portion of the roadway as nearly as possible."

In Krepcik v. Interstate Transit Lines, 154 Neb. 671, 48 N. W. 2d 839, we concluded that such sections are to be construed together, and that the "right half of the highway" as that term is used in section 39-746, R. R. S. 1943, means the right half of the main-traveled portion of the highway available for traffic.

Also, in Born v. Estate of Matzner, 159 Neb. 169, 65 N. W. 2d 593, citing Klaus v. Soloman Valley Stage Lines Co., 130 Neb. 325, 264 N. W. 747, and Kuska v. Nichols Construction Co., 154 Neb. 580, 48 N. W. 2d 682, we held: "A traveler may ordinarily occupy and use any part of a public highway he desires if it is not needed by another whose right thereto is superior to that of the traveler."

Section 39-7,108, R. R. S. 1943, provides in part: "(1) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing. * * * (3) The following speeds shall be prima facie lawful, but in any case when such speed would be unsafe, they shall not be lawful: * * * sixty miles per hour between the hours of sunrise and

sunset and fifty miles per hour between the hours of sunset and sunrise upon any highway outside of a city or village. (4) The fact that the speed of a vehicle is lower than the foregoing prima facie limits shall not relieve the driver from the duty to decrease speed * * * when approaching and going around curves, when approaching a hill crest, when traveling upon any narrow or winding roadway, or when special hazards exist with respect to * * * other traffic or by reason of weather or highway conditions, and speed shall be decreased as may be necessary to avoid colliding with any * * * vehicle or other conveyance on * * * the highway in compliance with legal requirements and the duty of all persons to use due care; * * *."

Section 39-735, R. S. Supp., 1953, provides in part: "Every vehicle, * * * (1) having a width, including load, of eighty inches or more, or (2) having any part thereof or having any load thereupon which shall extend forty inches or more to the left of the center of the chassis shall display, when driven, pulled, operated, or propelled upon any state highway, during the period from one half hour after sunset until one half hour before sunrise, and at all other times when there is not sufficient light to render such vehicle clearly discernible, *two clearance lights* on the left side of such vehicle. One of such lights shall be located at the front and display a green or amber light visible, under normal atmospheric conditions, *from a distance of three hundred feet to the front of such vehicle.* The other clearance light shall be located at the rear and display a red light visible under normal atmospheric conditions, from a distance of three hundred feet to the rear of said vehicle. The light at the rear shall be located at a sufficient distance above the tail light of such vehicle so it will not be confused with such tail light by those approaching from the rear. *Such light* shall be located on a line with the extreme outer point of such vehicle or the load thereon; Provided, *suitable reflectors* of like color, equal visibility, and of a

type approved by the Department of Roads and Irrigation may be substituted for *such clearance lights;* and provided further, *the installation of all lamps shall be made in such a manner that no hazard will be created by their use on the highway.*" (Italics supplied.)

With regard to such section, a part of defendants' tendered instruction No. 2 requested the trial court to inform the jury with regard to defendants' trailer that: "At the time of the collision involved in this case the statute did not specifically provide where the front light should be located upon the vehicle other than upon the left side thereof." The trial court refused to do so, and by instructions Nos. 5, 6, and 9 informed the jury substantially that the left front clearance light of defendants' trailer was required by law to be located and displayed on a line with the extreme outer left front edge or point of such vehicle. In that connection, defendants argued that the refusal to inform the jury as requested, and the information with relation thereto contained in instructions Nos. 5, 6, and 9, was a judicial extension of the language of section 39-735, R. S. Supp., 1953, and prejudicially erroneous. We do not agree.

A history of the statute and its related language, when considered in context, refutes defendants' contention. The solution depends upon whether the italicized portion aforesaid, to wit, "Such light," refers to both clearance lights or only the one at the rear. We conclude that it refers to both.

The history of that section discloses that as originally enacted by Laws 1931, chapter 106, section 2, page 280, the section read "Said lights." When amended by Laws 1939, chapter 78, section 3, page 319, it read "Said lights." Thereafter, it appeared in section 39-735, R. S. 1943, as "Such lights." When amended by Laws 1945, chapter 92, section 1, page 314, it read "Such lights." When amended by Laws 1949, chapter 117, section 1, page 313, it read "Such lights." However, when that act was carried over as section 39-735, R. R. S. 1943, by the reissue

of volume 3 of the statutes in 1952, there was simply an inadvertent typographical omission of the letter "s" from the words "Such lights," which erroneously made the section read "Such light." Thereafter, when amended. by Laws 1953, chapter 131, section 13, page 409, in order only to make the section applicable to any such vehicle operating "upon any state highway" instead of "upon any paved or bituminous surfaced highway," the aforesaid typographical omission was inadvertently carried forward as "Such light" instead of "Such lights," into section 39-735, R. S. Supp., 1953. From such history and language, we find no clear legislative intent to change the basic law and make it an absurdity by permitting a clearance light to be located in such manner that it could not reasonably be seen from a distance of 300 feet from the front of such vehicle in order to clear, but would create a hazard on the highway, contrary to the very language, purpose, and design of section 39-735, R. S. Supp., 1953.

As hereinafter observed, it is undisputed that defendants violated section 39-735, R. S. Supp., 1953, in failing to locate the left front clearance light of their trailer "on a line with the extreme outer point of such vehicle or the load thereon," so that it would be "visible, under normal atmospheric conditions, from a distance of three hundred feet to the front of such vehicle," which was evidence of negligence that might be taken into consideration with all other facts and circumstances by the jury in determining whether or not defendants were negligent, and if so, whether or not such negligence proximately caused or contributed to the accident and plaintiff's injuries.

The record discloses evidence adduced in plaintiff's behalf substantially as follows: On the early evening of August 29, 1954, four young men and two young women, all of whom were minors, drove to Gothenburg in a 1947 Pontiac hard-top four-door sedan, owned and driven by one of the young men named Joe Tetro, who was a

friend of the group. There they all went to a picture show which ended about 11:15 p. m. They then drove out to a parkway just west of Lake Helen near Gothenburg and parked the car, facing north. One of the young men had a one-half pint bottle of bourbon whiskey and six bottles of Seven-Up. Someone in the group then spiked each of the six bottles of Seven-Up alike with one ounce plus of bourbon, and discarded the whiskey bottle. None of them had any other drinks of intoxicating liquor during that day or the evening hours while they were together. While there, each of the young people consumed one such drink while they casually visited with each other for 15 or 20, maybe 30 minutes. By that time a rain storm with gusty wind and lightning was approaching, so they decided to go home. They started to do so with Joe Tetro at the wheel. All other occupants, including plaintiff, were simply guests in the car. Kathleen McCullough sat next to the driver in the middle of the front seat, with John William Egenberger, plaintiff's brother, sitting on her right. Plaintiff sat in the left rear seat, with Betty Hoagland, a friend of Kathleen's in the middle, and with Bill McCullough on her right. Kathleen and Bill were brother and sister, and cousins of plaintiff and John William Egenberger. Four occupants of the car who saw and recalled the facts and circumstances surrounding the accident, and plaintiff, who, because of his injuries, had no memory or recollection with regard thereto, testified as witnesses for plaintiff.

From the parkway, plaintiff's driver drove north about one-fourth mile on the right side of a rather hard, dry, graveled road, which then turned east at a 66-degree curve and slightly inclined upward for about a block to a crest, then leveled off some distance and turned northeast around a 23-degree curve to a main-traveled highway. All four witnesses testified that none of the occupants, including plaintiff's driver, was affected in any manner by the one and only drink of intoxicating

liquor. Plaintiff's driver had driven with care and none of them had any worry or anxiety about the manner in which the car was driven. No one testified that any of the occupants were under the influence of intoxicating liquor or had any odor thereof upon them after the accident.

The accident occurred on the graveled road near a point about 148 feet east of the 66-degree curve. At the place where the collision occurred, the graveled portion of the road was 28½ feet wide, with a ditch 3 feet wide south of the graveled portion. North of the main-graveled portion was an additional solid north shoulder 3½ feet wide, having a slope of only 6 or 7 inches to a north bank over which defendants' driver could reasonably have operated his vehicles. In other words, it was 32 feet from the north bank to the south edge of the graveled portion of the road. Also, at the point of collision there was a driveway level with the road leading north into the west gate of the so-called rodeo grounds on the north side of the road upon which the driver of defendants' vehicles, traveling west, could have safely turned out if not driving at a high rate of speed.

Defendant Turner was driving defendant corporation's dark red power wagon west. It had a four-wheel, dark green trailer, with a box thereon, containing about 3 tons of chopped green alfalfa, attached to the rear of the power wagon by a 4 foot 1 inch tongue. The power wagon concededly weighed 6,000 pounds. The trailer itself concededly weighed 5,600 pounds, and as so loaded it weighed 11,600 pounds. Thus the total weight of the power wagon and loaded trailer was 17,600 pounds. The power wagon, equipped only with ordinary foot and emergency brakes, was 6½ feet wide and 16½ feet long, with headlights 43 inches above the ground and 48 inches apart from center to center, which would make the level of the driver's eyes when seated in the cab about 5½ feet above ground. The cab had no border or side lights. The trailer had no brakes. Its box was

14 feet long, which would make the power wagon and attached trailer some 34½ feet long. The trailer box was 8 feet 4½ inches wide, and protruded out over the left or south side of the road 4½ inches farther than it did on the right or north side. The bottom of the trailer box was 45 inches above the ground. An amber clearance light on the left side or front of the trailer was located 47 inches above the ground and 12 inches to the right of the extreme left lower outer corner of the box where a steel lever-operated gate was located to the left of it with which to dump the alfalfa. A witness for defendants testified that such front clearance light was located 7 inches to the right of the left lower outer corner of the trailer, but the jury could have found from his testimony that such measurement had been made after the trailer had been repaired by the removal of about 4 inches of the over-protruding left side of the trailer box. In any event, such clearance light was not located "on a line with the extreme outer point of such vehicle or the load thereon" as required by section 39-735, R. S. Supp., 1953, heretofore discussed. The jury had a right to believe that such clearance light was located 12 inches to the right of the lower left corner of the trailer which would place it just 4 inches higher and behind the left headlight on the power wagon, and leave 12 inches or more of the over-protruding left corner of the trailer box without any clearance light. Thus the jury could have reasonably concluded that such clearance light was not discernible to plaintiff's driver and the occupants of his car, approaching from the west.

As the car in which plaintiff was riding turned east at the 66-degree curve on its right side of the road traveling 20 or 25 miles an hour without any skidding or weaving, four of the passengers who were then looking, saw defendants' power wagon headlights approaching from the east at the top of the crest about a block away. The wind was blowing gustily and there was

some dust, but their observations were not obstructed thereby. Contrary to defendants' contention, such observations about which they testified were affirmative and not negative evidence.

Although they were looking, none of them ever saw any clearance light on the left front side of the trailer and all were entirely unaware that it was on the road. One such occupant was unfamiliar with the road and, although looking, could not tell whether or not the headlights of defendants' power wagon were approaching in the middle of the road, or estimate defendants' speed, although they did not seem to be approaching exceedingly fast. Another who was looking observed that the approaching headlights "were in the center" of the road "over their line." Another who was looking observed that defendants' approaching headlights were "a little on our side" of the road and approaching at "about the same speed" as the car. The latter statement is corroborated by the fact that the collision occurred about 148 feet, or one-half of the block, between the crest and the curve. Another observed that the approaching headlights "looked like they was over toward the center" of the road and approaching at about the same speed as the car, although plaintiff's driver accelerated his speed some, up to maybe 40 miles an hour, after turning the curve. Four occupants of the car observed that plaintiff's driver was driving with care over on his own side of the road at all times and they had no anxiety or anticipation that a collision would occur.

The car passed the power wagon without incident, but suddenly without warning the lower left-hand protruding corner of the trailer collided with the car at the upper left-hand corner of its cowl, just ahead of the left windshield post. The collision tore off the left windshield post and glass, without touching the steering wheel. It tore off the left front door post, permitting that door to sag down and outward toward the ground on the left side of the car. It tore off its left back door,

which was later found in the road some distance east of the trailer. It tore the top of the car entirely loose from its moorings and laid it back on the trunk. The impact threw John William Egenberger, who sat on the right side of the front seat, out of the car into the south edge of the road, where, unconscious, he remained for some time until some one came to his assistance. The impact knocked plaintiff's driver unconscious, and, with the power still on, he slumped down in his seat with his hands off the steering wheel and his foot down on the accelerator while the car went down the road toward the east. Thereupon Bill McCullough, the young man sitting in the right rear seat, reached over the front seat, grabbed the steering wheel, and told his sister Kathleen to turn off the ignition. However, bleeding from lacerations around her eyes, she could not see to do so. In that situation, Bill steered the car along the road toward the east until he intentionally turned it off the road and crashed into the east rodeo gate about 594 feet from the place of collision, where it stopped with its rear about 12 feet north of the road. There the car struck the west gate post and all remaining occupants except plaintiff were thrown out to the ground. Plaintiff was thrown to the floor with his head hanging out over the running board. He was unconscious and gravely injured about his left shoulder, head, and face, which resulted in permanent disfiguration of the left side of his face. The other occupants were also injured in varying degrees unimportant here.

A state patrol sergeant, who testified as a witness for plaintiff, arrived at the scene of the accident about midnight, accompanied by a state patrol trooper. The Gothenburg chief of police and defendant driver were there at that time and defendant corporation's manager arrived some time later. It began to rain lightly at about the time the sergeant and trooper arrived, and they sat in their car a few moments until a more severe shower abated. The sergeant then investigated the sit-

uation, made measurements, and prepared a diagram to illustrate his findings. It appears in the evidence as exhibit No. 18. He examined the car and orally described damages thereto substantially as heretofore recited. He examined the trailer and found that the wood and metal gate latch at the bottom of the left front corner of the box thereof had been damaged. He found no other damages to the trailer. The graveled portion of the road was 28½ feet wide and fairly smooth, with no marked center line. It was 32 feet from the north edge of the 3-foot south ditch across the graveled portion of the road and the north solid shoulder thereof to the north bank. There was no gravel piled along either side of the graveled portion of the road. There were no visible tracks indicating the course of the vehicles prior to the collision. He found a gouge mark or marks about 10 inches long and 4 inches wide extending east and west under a Pontiac car door, which had been picked up by someone east of that point and so placed to prevent obliteration of the gouge by the rain. It was 13 feet 6 inches from the north edge of the gouge to the north edge of the graveled portion of the road. The county surveyor, as a witness for plaintiff, indicated that such distance should have been 14 feet, but his measurements were made sometime later. The north edge of the gouge was 17 feet south of the north bank of the road. The south edge of the gouge was located 14 feet 8 inches north of the south edge of the graveled portion of the road. Thus, by respectively measuring from the north and south edges of the gouge, a differential of 4 inches in the width of the graveled portion was accounted for. It was 23 feet 8 inches from the west post of the west rodeo gate and across its driveway directly south to the north edge of the gouge. It was 15 feet diagonally northwest from the gouge to the left rear corner of defendants' trailer box, which had stopped with the right rear corner of the box 4 feet 6 inches south of the north bank and about

1 foot from the north edge of the graveled portion of the road. The sergeant testified that the gouge could have been made by the left end of the Pontiac's front bumper which extended out several inches to the left of the car as it went under the left front corner of the trailer and was pushed down to the ground, or that it could have been so made by the car door when it was torn loose and swung out to the left or north away from the car and went down into the road. All parties have generally assumed the latter to be true.

The record discloses evidence adduced in defendants' behalf substantially as follows: Defendant truck driver testified that he was driving the power wagon in low gear at about 5 miles an hour on the right side of the graveled portion of the road, but not out on the shoulder because he didn't feel it was safe there. His headlights and clearance lights were on as he came over the crest and started down grade to what he called the blind intersection. He was familiar with the road, having traveled over it many times recently with that or other similar vehicles. He first saw the headlights of the car after it crossed a canal bridge about 300 feet south of the curve, which would then be about 600 feet from him. The car was approaching the curve at about 60 miles an hour or more, but slowed down to about 40 miles as the car made the turn. There it plowed up quite a little dust as the car went over the left center of the road in front of him and he thought they would meet head-on. However, the car then straightened up and missed his power wagon but collided with the left front corner of the trailer. He felt the impact but drove on a little way further until he heard the tin car door strike the ground, after which he put on his brakes and stopped within about the length of his vehicles. The collision mashed the left front clearance light and bent the dump gate latch to the left of it. When the collision occurred, the rear of his truck was about 7 feet east of the west post of the west rodeo gate where the drive-

way thereto was level but not long enough he thought to put his whole vehicle upon it. He testified that he drove only 16 feet after he first saw the car 300 feet south of the curve until the collision occurred about 154 feet east of the curve, and that he drove only 2 or 3 feet after the car came around the curve until the collision occurred about 3 seconds later. He testified that he had no time to apply his brakes or give a signal or move over after the car came around the curve, but admitted that after the first time he saw the car speeding 300 feet south of the curve he at all times just kept in the same lane of travel and proceeded down the declining road toward the blind intersection in the same manner as he did before he first saw the car.

One witness for defendants saw the power wagon and trailer stopped on the north side of the graveled portion of the road and could not tell how far the trailer was from the north edge thereof, but claimed that he saw tracks which indicated that it had traveled along in a straight line. Neither the patrol sergeant nor anyone else was able to find any such tracks.

In that connection, although several cars had traveled along the road after the accident, defendant corporation's manager attempted to testify that he saw the tracks of some car which had been skidding around the curve on the wrong side of the road. However, he did not in any manner attempt to trace or connect such tracks to the Pontiac. As a matter of fact, when such evidence was stricken as a conclusion and without foundation, counsel for defendants admitted that he was unable to prove by any evidence that such tracks were made by that car or any other particular vehicle. Nevertheless, defendants argued that the trial court erred in excluding such evidence. We hold otherwise.

In the annotation to 23 A. L. R. 2d at page 116, it is said, citing among other authorities Koutsky v. Grabowski, 150 Neb. 508, 34 N. W. 2d 893, Ficke v. Gibson, 153 Neb. 478, 45 N. W. 2d 436, and Danner v. Walters,

154 Neb. 506, 48 N. W. 2d 635: "The general rule is that testimony as to tire marks on the highway is admissible in civil actions for injury or damage, where a sufficient foundation therefor is laid as by showing, for example, that the condition of the road was the same as it was at the time of the accident, and had not been changed by the weather or traffic, and there is sufficient identification that the marks were made by the automobile involved in the accident." Defendants' contention is controlled thereby.

In the light of the evidence heretofore recited and the authorities heretofore set forth, we conclude that the issues of negligence and proximate cause were for determination by the jury and the trial court did not err in overruling defendants' motions to direct or dismiss, or in refusing to sustain their motion for judgment notwithstanding the verdict.

In Callahan v Prewitt, on rehearing, 143 Neb. 793, 13 N. W. 2d 660, we held: "While evidence of use of intoxicating liquor at or about the time of an accident may be insufficient to prove intoxication yet if the occurrence is so close in time to an accident as to be considered as an incident related thereto it may be admitted as a circumstance proper to be considered by a jury in determining the existence or nonexistence of negligence." See, also, Cunning v. Knott, 157 Neb. 170, 59 N. W. 2d 180.

Concededly, each of the six youthful occupants of the car had consumed one spiked drink containing one ounce plus of bourbon whiskey a few moments before the collision. Four of them testified as witnesses for the plaintiff that they were not affected in any manner by such liquor. As heretofore recited, they also testified concerning their observations and opinions with regard to the distance, speed, relative location of their own and defendants' vehicles, and other matters relating to the collision. Two of such witnesses were asked on cross-examination whether they had been in the habit of

drinking whiskey upon other occasions prior to that night, purportedly in order to establish that they were neophyte drinkers. Objection thereto was sustained, and the trial court limited such inquiry to the consumption of liquor by the witnesses during the day on which the collision occurred. In that connection, defendants argued that the trial court erred prejudicially in so doing. We conclude otherwise.

In 58 Am. Jur., Witnesses, § 624, p. 345, it is said, citing authorities from this and other jurisdictions: "While the principle that cross-examination should be confined to matters relevant and material to the issues is not disputed, the rule of relevancy is much more liberally construed on cross-examination than on direct examination. The exact extent to which cross-examination respecting collateral matters may go rests almost entirely in the discretion of the trial court, since from the nature of the case no fixed rule can be devised defining the right and limiting the extent of irrelevant inquiry which will be just or safe in universal application. This must be determined by the relation and apparent character and bearing of the witness under examination, and the circumstances attending the particular case on trial, and an appellate court will not interfere with the exercise of discretion by the trial court unless a clear abuse thereof appears."

Also, as stated in 58 Am. Jur., Witnesses, § 704, p. 381: "As affecting the credibility of a witness, it may be shown that he was intoxicated at the time of the occurrence of the events about which he testified. This may be done not only by the evidence of another witness, but also by cross-examination of the witness himself, and it has been held unnecessary to lay a foundation for the introduction of proof of this character by first questioning the witness as to his condition at that time.

"Generally speaking, however, the right to impeach a witness by showing intoxication at the time of an occurrence to which his testimony relates extends no

further than the admission of material evidence relevant to the witness's condition during the period covered by such occurrence." See, also, 58 Am. Jur., Witnesses, § 117, p. 91; 61 C. J. S., Motor Vehicles, § 516, p. 250. We conclude that under the circumstances presented in this case, the trial court did not abuse its discretion.

Defendants also argued that the trial court erred prejudicially in refusing to permit their physician, as an expert witness, to answer certain questions with relation to the length of time necessary for alcohol to affect the senses and judgment of a neophyte drinker, and in striking his answer that a neophyte drinker would have quicker reaction from alcohol than one with a tolerance therefor. That contention has no merit because defendants' physician was permitted, without objection, to affirmatively testify fully and at length about such matters. That conclusion also disposes of defendants' contention that the trial court erred in refusing to permit their physician to answer certain hypothetical questions and in refusing a related offer of proof. The substance of the offers made already appeared in the record. Further, one such hypothetical question about which defendants complain was in fact answered in full, and such answer was never stricken from the record.

Section 24-340, R. R. S. 1943, provides: "The reporter shall attend all terms of the district court held within and for the district for which he is appointed, and shall make a stenographic report of all oral proceedings had in such court, including the testimony of witnesses with the questions to them, verbatim, *and any further proceedings or matter when directed by the presiding judge so to do,* or requested by either party to said proceeding, and, when requested at the beginning or during the progress of the trial by any party to the proceedings, all comments and statements made by the judge in the presence of the jury shall in all cases be taken down and recorded by the reporter; but the parties may, with the consent of the judge, waive the re-

cording by such reporter of any part of the proceedings herein required to be taken. *Arguments to the jury shall not be recorded;* and whenever, during the progress of the cause, any question arises as to the admissibility or rejection of evidence or any other matter causing an argument to the court, such argument shall not be recorded, but the reporter shall briefly note the objection made and the ruling of the court thereon, and any exceptions taken by either party to such ruling." (Italics supplied.)

In that connection, defendants argued that the trial court erred in denying defendants' request to have all of plaintiff's final arguments to the jury officially reported. In doing so, they cited and relied upon Ripley v. Godden, 158 Neb. 246, 63 N. W. 2d 151, which is clearly distinguishable.

The trial court had theretofore excluded exhibit No. 29, a schematic drawing which illustrated plaintiff's theory about where and how the collision occurred, because it constituted an argument by counsel for plaintiff, but stated to counsel and the jury that such "ruling does not go to the extent of preventing the plaintiff from using the drawing in arguing to the jury about the relationship of the various details disclosed in the testimony." Thereafter, but before the cause was argued to the jury, an all-inclusive objection of counsel for defendants to the display and use of exhibit No. 29 in argument was overruled, whereupon defendants requested that plaintiff's entire final arguments should be reported by the official court reporter. This the court declined to do, but did direct the reporter to remain available during the course of the arguments for the purpose of recording any objections made during such arguments. In argument, as counsel placed exhibit No. 29 upon an easel in view of the jury, defendants requested that such part of plaintiff's argument should be reported, which was done.

We believe the applicable and controlling general

rule appears in Caesar v. Wegner, 262 Wis. 429, 55 N. W. 2d 371, wherein the court, citing authorities, said: "While it is not the duty of the reporter to take down the arguments to the jury unless he is directed to do so, he should be available; and if objections are made or controversy arises during the course of the argument, the court, whose duty it is to be present at all stages of the trial, should direct a record to be made." See, also, Sandomierski v. Fixemer, 163 Neb. 716, 81 N. W. 2d 142. We conclude that the trial court complied with such rule in every respect, and failure to require the reporting of all of plaintiff's final arguments was not prejudicial to defendants.

Further, generally a trial court may in its discretion permit counsel, in addressing the jury, to display and use schematic drawings, diagrams, and maps, not put in evidence, by way of illustration or elucidation of evidence actually adduced, provided the jury understands that they are employed merely for such purposes and are not of themselves evidence in any sense. 53 Am. Jur., Trial, § 490, p. 395; 88 C. J. S., Trial, § 177, p. 348; Annotations, 9 A. L. R. 2d 1046, 37 A. L. R. 2d 662, 44 A. L. R. 2d 1205, L. R. A. 1918 D 80.

Contrary to defendants' contention, we conclude from an examination of the evidence adduced, and arguments made by plaintiff's counsel with relation to exhibit No. 29 in connection with demonstrative photographs and other evidence appearing in the record, that the trial court did not abuse its discretion.

Defendants argued that the trial court erred prejudicially in giving instructions Nos. 11 and 13, and in failing to properly instruct upon their theory of defense as shown by the pleadings and evidence. We sustain that contention.

In that connection: "It is the duty of the trial court, without request, to instruct the jury on each issue presented by the pleadings and supported by evidence.

"A litigant is entitled to have the jury instructed as

to his theory of the case as shown by the pleading and evidence, and a failure to do so is prejudicial error.

"It is the duty of the trial court, without request, to submit to and properly instruct the jury upon all the material issues presented by the pleadings and the evidence. This rule applies to the affirmative defense of contributory negligence." Krepcik v. Interstate Transit Lines, *supra.*

In such respect, the rule also applies in cases wherein defendant pleads and adduces evidence that plaintiff's driver was negligent in certain specified particulars and that such negligence was the sole proximate cause of the accident and injuries. See, also, Krepcik v. Interstate Transit Lines, 153 Neb. 98, 43 N. W. 2d 609, wherein we said: "It is the uniform and proper practice in this state that where specific acts of negligence are charged and supported by the evidence, the trial court instructs as to the specific acts so alleged and supported."

It should be noted that this is not a case wherein defendants pleaded generally that the negligence of plaintiff's driver was the sole proximate cause of the accident and thereby left themselves in a position about which they could not complain if the court failed to submit specific claimed acts of negligence. However, as heretofore noted, defendants pleaded that plaintiff's driver was negligent in certain specific particulars as alleged aforesaid, and that such negligence was the sole proximate cause of the accident, yet the trial court erroneously failed to specifically submit defendants' theory of defense as alleged by them. In that connection, the court only recited in instruction No. 2: "Defendants claim that the sole cause of the collision was the negligence of plaintiff's driver, Joe Tetro," and "The plaintiff has filed a reply denying the affirmative claims made by the defendants." In that connection, instruction No. 3 said in part: "The 'burden of proof' is the duty resting upon a party who claims a fact to be true, to establish such fact by a preponderance of the evidence."

Such language, when read in the light of the aforesaid language contained in instruction No. 2, erroneously left a clear inference that in such respect defendants did have a burden of proof which was prejudicial to defendants.

"The purpose of an instruction is to furnish guidance to the jury in their deliberations, and to aid them in arriving at a proper verdict; and, with this end in view, it should state clearly and concisely the issues of fact and the principles of law which are necessary to enable them to accomplish the purpose desired." Langdon v. Loup River Public Power District, 144 Neb. 325, 13 N. W. 2d 168. See, also, Barney v. Adcock, *supra*.

"Where an instruction assumes to define the whole law of the case but omits a material element therefrom, it is reversible error which may be relied upon although no proper instruction has been requested by the party seeking to take advantage of the defect.

"An instruction which conflicts with propositions of law properly and correctly stated in another instruction in the same charge on a vital issue of fact, and tends to mislead or confuse the jury in deliberating on conflicting evidence, is erroneous and prejudicial." Cover v. Platte Valley Public Power & Irr. Dist., 162 Neb. 146, 75 N. W. 2d 661. See, also, Brooks v. Thayer County, 126 Neb. 610, 254 N. W. 413.

"Where a party has produced proof tending to sustain his theory of the case, he is entitled to have such theory submitted to the jury by suitable instructions, without qualifying words calculated to mislead the jury into the belief that, although they may find the theory of such party to be true, they may return a verdict for the opposing party." Brownfield v. Union Pacific R. R. Co., 74 Neb. 440, 104 N. W. 876.

"An error in an instruction is not cured by the giving of other instructions, where such error consists, not of an omission of some material fact, but of an affirmative statement by the court which, when considered

with the other instructions, tends to confuse the jury." Wilch v. Western Asphalt Paving Corp., 124 Neb. 177, 245 N. W. 605.

In the light of such rules aforesaid relating to instructions, we turn to the question of whether or not instructions Nos. 11 and 13 were prejudicially erroneous. We conclude that they were.

Instruction No. 11 first recited six alphabetically-designated circumstances which should have applied to and been considered by reasonably prudent drivers in the same position as the drivers here involved. All of the instruction except the last paragraph simply stated a rule of law which could and did have application to the duties of both drivers with respect to such circumstances. Defendants' first contention is that such instruction as it related to both drivers failed to give defendants the benefit of the rule that: "A user of the highways may assume, unless and until he has warning, notice, or knowledge to the contrary, that other users of the highway will use them in a lawful manner, and until he has such warning, notice, or knowledge, he is entitled to govern his actions in accordance with such assumption." Paddack v. Patrick, 163 Neb. 355, 79 N. W. 2d 701. In that respect, we believe that in the light of the language of the instruction, which is too voluminous to recite here, such portion of the instruction was not prejudicial to defendants.

On the other hand, the last paragraph of instruction No. 11 read: "If you find that the defendant failed to exercise the judgment of a reasonable prudent man in controlling the position and course of the power wagon and trailer in view of the circumstances and conditions shown by the evidence, you may find the defendant negligent and find that the plaintiff's first proposition has been established." No precautionary language appears in the instruction with relation to the important factors of "preponderance of evidence as related to defendants" or to "proximate cause" with relation to

either driver, and, in that connection, the jury was not told alternatively what its findings should be if it found from the evidence that plaintiff's driver failed to exercise the judgment of a reasonably prudent man. The instruction, having application to both drivers and being simply the statement of a rule of law, the last paragraph should have been either omitted or the instruction should have been clarified by setting forth the obligation of each driver and the consequences to each resulting from a violation thereof.

Also, the jury was confronted with and requested to apply the language, "and find that the plaintiff's *first proposition* has been established." (Italics supplied.) The question presented was: Did such language refer to defendants' failure to take into consideration the six alphabetical circumstances theretofore set forth and thus fail to exercise the judgment of a reasonably prudent man, or did it refer back to paragraph 1 of instruction No. 5 which set forth defendants' alleged negligence? If it referred to the former, the instruction erroneously conflicted with instruction No. 5. If it referred to the latter, as we think after careful examination the court intended, no language was used referring back to paragraph 1 of instruction No. 5 or pointing out and defining such "first proposition" or telling the jury what it could find by use of clarifying language. The language used was so conflicting, incomplete, and misleading that we fail to observe how jurors, however intelligent as laymen, could discern its relation to paragraph 1 of instruction No. 5.

Instruction No. 13 first informed the jury that if it found that negligence by a defendant was a proximate cause of the injury, "such defendant may be held responsible for the entire result even though his negligence alone would not have brought about the entire result, and even though the evidence might show another to have been negligent." It then went on to say: "The burden upon the plaintiff to show that negligence of the

defendant was a proximate cause is not changed by the contention of the defendants that the conduct of Joe Tetro was the sole proximate cause of plaintiff's injuries. *You are not required to decide whteher* (sic) *Joe Tetro was negligent in any way.*" (Italics supplied.) Without qualifying such italicized language, by adding thereto "if you find that defendant was negligent in one or more particulars as alleged and that such negligence was a proximate cause of the accident," the instruction was incomplete, conflicting, and misleading. The italicized language should have been either omitted or qualified as aforesaid. Also, a double reference in the instruction respectively to, "you may find for the plaintiff upon the second proposition," and "you will find for the defendant upon the second proposition," without referring back to paragraph 2 of instruction No. 5 or without pointing out and defining such "second proposition" or telling the jury what it could find by use of clarifying language, was incomplete, confusing, and misleading.

In our discussion and disposition of defendants' assignments of error with relation to instructions, we have not overlooked the rule that: "Instructions are to be considered together, to the end that they may be properly understood, and, if as a whole they fairly state the law applicable to the evidence when so construed, error cannot be predicated on the giving thereof." Granger v. Byrne, *supra*. We have simply concluded that such rule is not controlling in the case at bar.

For reasons heretofore stated, we conclude that the judgment of the trial court should be and hereby is reversed and the cause is remanded for new trial. All costs are taxed to plaintiff.

REVERSED AND REMANDED.