VIRGINIA S. HURLBUT, APPELLEE, V. KENT B.
LANDGREN, APPELLANT.

264 N. W. 2d 174

Filed March 29, 1978.   No. 41277.

Schmid, Ford, Mooney, Frederick & Caporale and
Waldine H. Olson, for appellant.

Richard J. Dinsmore of Dolan & Dinsmore, for
appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH,
McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

WHITE, C. THOMAS, J.
The appellee, plaintiff below, brought an action in

the District Court for damages for personal injuries resulting from an automobile-pedestrian accident near Waterloo, in rural Douglas County, Nebraska. The jury returned a verdict for plaintiff of $180,001. The appellant, defendant below, filed a motion for new trial which the trial court overruled, and defendant appeals. We affirm.

Defendant assigns as error: (1) The overruling of the defendant's motions for a directed verdict at the close of plaintiff's case and at the close of all the evidence; (2) the refusal to give defendant's tendered instruction No. 5 informing the jury that the court found that plaintiff was contributorily negligent as a matter of law; (3) the refusal to give defendant's tendered instruction No. 14 that the jury should reduce the amount of any recovery in the event it found for the plaintiff, if it found that by reason of the plaintiff's own conduct she enhanced her own injuries by refusal to cooperate in treatment; (4) the court's refusal to give defendant's tendered instruction No. 12 on assumption of risk; and (5) that the evidence did not support the verdict.

Sometime between midnight and 1:30 a.m., on May 12, 1974, the plaintiff was walking along county road No. 96 in Douglas County near Waterloo, Nebraska, when she was struck by a vehicle operated by the defendant. The plaintiff suffered severe injuries. Prior to the incident, the plaintiff had been in a bar in Waterloo. Her husband had been with her, but the plaintiff, desiring to stay a longer time, remained at the bar when her husband left for home. The plaintiff left the bar and inquired of the village marshal whether she could secure a ride to her home in the Timber Lodge area west of Waterloo, Nebraska. The marshal replied that he could not leave his post, but stopped an automobile operated by two boys to secure a ride for the plaintiff to her home. It was the opinion of the marshal that the plaintiff was intoxicated at the time he had this con-

versation with her. This evidence was disputed by the plaintiff and by the bartender at the Townhouse bar in Waterloo, both of whom testified to the contrary.

The route to the plaintiff's home was along county road No. 29, a road which runs from the west to the east out of the village of Waterloo. County road No. 29 is a 24-foot asphalt surfaced county road. The county road intersects county road No. 96, east of Waterloo. Prior to the intersection proper, there is a curve, or diagonal, going generally from the northwest to the southeast to enable traffic that is proceeding west on county road No. 29 to turn into county road No. 96 and bypass the intersection of county road No. 96 completely. At the approximate point where the diagonal joins county road No. 96, there is a gravel driveway, and approximately 628 feet to the south of this driveway on county road No. 96 is the entrance to the plaintiff's home.

The driver of the car in which the plaintiff was a passenger let the plaintiff out of the vehicle at the northernmost gravel drive near the intersection of the diagonal and county road No. 96. The plaintiff's reason for desiring to get out of the vehicle at this point, rather than being driven directly to her driveway, was that she had been experiencing some marital difficulty with her husband and did not wish to arouse his anger by being seen in the company of other persons. The plaintiff then began walking south on the shoulder of county road No. 96 toward her driveway and, according to her testimony, had progressed approximately one-half the distance between the driveways when she was struck by the defendant's automobile. The plaintiff testified on both direct and cross-examination that at all times she was walking on the shoulder of county road No. 96. The driver of the vehicle, from which the plaintiff had just alighted, continued south, dropped another passenger off, and then turned around and pro-

ceeded north on county road No. 96 where he observed the plaintiff lying on the shoulder west of county road No. 96. The witness testified that he saw the plaintiff 100 to 150 feet south of an identified telephone pole which is approximately half way distant between the two driveways.

Defendant, a 19-year-old young man, had spent the afternoon with companions; and, by his own admission, he had consumed a quantity of beer. The defendant, who immediately before the accident was operating his vehicle on county road No. 29, used the same diagonal as had the automobile in which plaintiff had been a passenger. The testimony indicates the defendant was going between 35 and 40 miles per hour. He saw the plaintiff only a split second before the impact and the plaintiff was then on the traveled portion of the highway.

As a result of the accident, plaintiff's left leg was broken in two places, one above the knee and one below the hip, as well as sustaining fractures of the bones of the left ankle joint, toes, fingers, right hip socket, and the tail bone.

We now consider the defendant's assignments of error. The defendant's first assignment of error is to the effect that the court erred in failing to direct a verdict for the defendant. It is elementary that in considering a motion for a directed verdict, the truth of all competent evidence submitted on behalf of the party against whom the motion is directed shall be considered as true. Further, that such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference which can reasonably be deduced from the evidence. Laux v. Robinson, 195 Neb. 601, 239 N. W. 2d 786.

Section 39-646, R. R. S. 1943, provides in part: "(2) Where a sidewalk is not available, any pedestrian walking along and upon a highway shall walk only on a shoulder, as far as practicable from the edge of the roadway.

"(3) Where neither a sidewalk nor a shoulder is available, any pedestrian who walks along and upon a highway shall walk as near as practicable to the edge of the roadway and, if on a two-way roadway, shall walk only on the left side of such roadway."

It was the plaintiff's testimony that she at all times was walking on the shoulder. It was the defendant's testimony, and that of other witnesses, that the plaintiff was walking on the roadway proper. It is obvious that there was a disputed issue of fact in this matter. For the purpose of the decision on the motion for directed verdict, both the trial court and this court must assume that the testimony of the plaintiff with respect to where she was walking immediately prior to the accident was true. She was, therefore, for the purpose of this discussion, totally within the permitted limits of the statute. It was obvious that the trial court was correct in not directing a verdict either at the close of the plaintiff's evidence or at the close of all the evidence.

Defendant's second assignment of error concerns the trial court's refusal to give the defense' tendered instruction No. 5. This instruction recited: "The court has determined as a matter of law under the evidence that the plaintiff was negligent with regard to her position upon a portion of the roadway open to vehicular traffic at the time of the accident." The court's refusal to give this instruction was amply justified. Again, it will be pointed out that the plaintiff's position on the highway, whether on the traveled portion of the roadway or on the shoulder, was a matter of dispute in the evidence. Furthermore, even if the plaintiff had been found by the jury to be walking on the traveled portion of the highway at the time of the accident, a violation of a statute is not negligence per se but is merely evidence of negligence. See, Plumb v. Burnham, 151 Neb. 129, 36 N. W. 2d 612; Egenberger v. National Alfalfa Dehydrating & Milling Co., 164 Neb. 704, 83 N. W. 2d 523.

Defendant's next assignment of error is the failure of the trial court to submit defendant's tendered instruction No. 12 concerning the plaintiff's assumption of risk. Defense of assumption of risk presupposes that the plaintiff had some actual knowledge of the danger, that he understood and appreciated the risk therefrom, and that he voluntarily exposed himself to such risk. See Jensen v. Hawkins Constr. Co., 193 Neb. 220, 226 N. W. 2d 346. We are asked to conclude, as was the trial court, that by reason of the fact that the plaintiff asked to be let out some 600 feet from her driveway, and undertook at night to walk along or even upon the traveled portion of a two-way roadway, that the plaintiff voluntarily and knowingly assumed the risk of being struck by an automobile traveling along said roadway. This we are unwilling to do. We do not conclude that the mere act of walking along a roadway or on a roadway is of itself an assumption of risk of an accident involving severe personal injuries.

The final assignment of error relates to the plaintiff's own conduct with respect to her injuries and during the course of treatment of those injuries. After the extensive injuries suffered by the plaintiff, she was hospitalized at Nebraska Methodist Hospital from May 12, 1974, to July 5, 1974. She was operated upon and was discharged to her home with a total body cast which rendered her absolutely incapable of getting around the house. She was again hospitalized on October 20, 1974, and dismissed on December 22, 1974. Again she had a total body cast, was unable to care for herself, and was totally reliant upon other people. There was further hospitalization from January 29, 1975, to June 21, 1975. She was dismissed without the total body cast and was placed on crutches; this was the first time that the plaintiff was not totally bedfast. The plaintiff was again hospitalized from February 9, 1976, to May 10, 1976.

The plaintiff, according to the defendant, did not

cooperate in her own treatment. The evidence reveals that the patient developed complications which hindered the healing process. At trial, there was testimony from a treating physician that at the time of the injury plaintiff was taking cortisone, a steroid drug. Since steroid drugs cannot be abruptly discontinued, but must be gradually decreased over a period of time, the plaintiff had to continue on the cortisone. This medication interferes with the normal healing process. Corrective surgery, which would restore some of the movement to her fractured leg, was not capable of being performed due to extensive tissue necrosis. Necrosis is a condition characterized by deposits of dead tissue in the area of the fractured bones which can develop because of inactivity while a person is bedfast.

The defendant alleges that it was difficult to persuade the plaintiff to eat properly and that, while in the body cast, she resisted movement in the bed. Such movement would have assisted and possibly forestalled the tissue necrosis. The defendant's allegation was supported by deposition testimony of a nurse who attended the plaintiff for a period of time. Extensive psychiatric testimony was introduced by the plaintiff that the plaintiff's lack of interest in an appropriate diet and in moving and cooperating with the nurse about the movement into different positions while bedfast was due to a depressive neurosis. This type of neurosis is a predictable part of the whole injury-recovery syndrome. In addition to being a very active person who was suddenly bedfast and totally helpless, the plaintiff's marriage was in the process of breaking up during the time of her recovery. It was the opinion of the psychiatrist that the plaintiff at all times was being honest, candid, and straightforward. The psychiatrist testified the plaintiff wanted to get better and that the plaintiff had no motivation either consciously or unconsciously not to get better. Her lack of interest and

depression were not willful or intentional, but a simple medical condition within the whole concept of the entire injury. Even the defendant's witness testified that it is not unusual for a person who has sustained multiple fractures to get depressed and thus to be listless and careless about his condition and cooperation in the treatment. The trial court refused to submit to the jury the requested instruction that the jury should reduce the amount of any recovery to the extent it found the plaintiff had enhanced her own injuries. The trial court found that the burden was on the defendant to prove that plaintiff should have taken some action to lessen her damages. Colton v. Benes, 176 Neb. 483, 126 N. W. 2d 652. The defendant's evidence, when properly considered, only suggested the effects of a psychiatric and mental state that was totally explanatory of the plaintiff's listlessness. The defendant introduced no evidence whatever that the plaintiff willfully failed to act to improve her own condition and offered no expert testimony to contradict that of the plaintiff's psychiatrist. The defendant totally failed to sustain the burden with respect to mitigation of damages and the trial court was correct in refusing to submit the tendered instruction.

Finding no error, we affirm the decision of the trial court.

AFFIRMED.