JOHN VANEK, PERSONAL REPRESENTATIVE OF THE ESTATE OF TONI
MARIE VANEK, DECEASED, APPELLANT, V. PAUL P. PROHASKA,
APPELLEE.
JOHN VANEK, APPELLANT, V. PAUL P. PROHASKA, APPELLEE.
448 N.W.2d 573

Filed December 1, 1989.   Nos. 87-1048, 87-1056.

T.J. Hallinan and Gordon D. Ehrlich, of Law Offices of Cobb & Hallinan, P.C., for appellant.

Ray C. Simmons, of Simmons & Schneider, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

Plaintiff, John Vanek, appeals from judgments on jury verdicts in favor of the defendant-appellee, Paul P. Prohaska, on both of appellant's causes of action which arose out of the death of Toni Marie Vanek, appellant's daughter, when she was

struck by appellee's vehicle. One action was by appellant as personal representative of the estate of the decedent for the pecuniary loss suffered by the heirs at law; the other action was by appellant for medical and funeral expenses. The cases are consolidated on appeal, as they were at trial.

The appellant's three assignments of error merge to allege that (1) the trial court erred in instructing the jury on the issue of assumption of risk and that (2) the verdicts are contrary to the evidence, to the unvarying and established principles of physics, and to the undisputed physical facts.

In determining the sufficiency of the evidence to sustain a verdict in a civil case, this court considers the evidence most favorably to the successful party and resolves evidential conflicts in favor of such party, who is entitled to every reasonable inference deducible from the evidence. *Fisher Corp. v. Consolidated Freightways*, 230 Neb. 832, 434 N.W.2d 17 (1989). Viewing the evidence in favor of the appellee, the record shows the following facts.

On August 16, 1985, Toni Marie Vanek, age 14, took her usual evening run, which consisted of jogging south some 800 or 900 feet along a county road in Saunders County, from her driveway down to the Houfek family driveway, and then back home. The Vanek driveway is on the west side of the road, while the Houfek driveway is on the east side. Toni Marie used this route approximately four times a week.

On the same evening, Paul Prohaska left his home in Prague, Nebraska, at about 8:15 to go to a neighbor's house to watch television. Accompanying Prohaska in his 1980 Ford pickup were his girlfriend, Rita Pospisil, and his brother, Curtis Prohaska. Paul Prohaska drove out of Prague and subsequently onto the road where Toni Marie was jogging. Prohaska was traveling south along the road at about 45 to 50 m.p.h., with his headlights on, when Curtis said he saw something on the side of the road. Prohaska estimated that this statement occurred approximately one-half mile from the accident site and testified that he looked but could not see anything at that point.

Prohaska then testified that he saw something on the right side of the road about one-fourth mile away, but could not tell

what it was. He thought that it might be cattle, as Rudy Houfek always had cattle out on the road. He then began to move over to the left side of the road. When Prohaska reached the Vanek driveway, he "let off" the accelerator, slowing down about 5 m.p.h., and moved all the way over to the left (east) edge of the road.

Prohaska testified that he was two or three car lengths away from the object on the roadside when he realized that it was a person. He stated that the person was moving south on the west side of the road and that as the pickup was going across the Houfek driveway, "she darted out and ran into the side of my pickup." The pickup then went into a ditch on the east side of the road past the Houfek driveway, went up a bank, hit three fenceposts, then went down the bank, and came to a stop in the ditch.

Toni Marie was found lying on the west edge of the road, approximately 30 feet south of the south edge of the Houfek driveway. A rescue unit was called, and a member of the rescue unit radioed the "life flight" helicopter from Omaha. Toni Marie had a large laceration on the back of her upper left thigh, had lacerations on her head and left elbow, and was unresponsive to painful stimuli. She was taken to the University of Nebraska Medical Center, where emergency measures to resuscitate her failed.

## ASSUMPTION OF RISK

The first assignment of error on appeal is that the district court erred in instructing the jury on the issue of the decedent's assumption of risk.

The defense of assumption of risk presupposes that the decedent had some actual knowledge of the danger, that she understood and appreciated the risk therefrom, and that she voluntarily exposed herself to such risk. *Hurlbut v. Landgren*, 200 Neb. 413, 264 N.W.2d 174 (1978).

The appellee's evidence of decedent's assumption of risk consisted of testimony by the decedent's mother and father that the decedent, through several conversations with her mother and father on this subject, knew that it was dangerous to walk or jog on the right side of the road. Appellee also claims in his

brief that violation of Neb. Rev. Stat. § 39-646(3) (Reissue 1988) is further evidence of decedent's assumption of risk. Section 39-646(3) provides that "[w]here neither a sidewalk nor a shoulder is available, any pedestrian who walks along and upon a highway shall walk as near as practicable to the edge of the roadway and, if on a two-way roadway, shall walk only on the left side of such roadway."

A violation of a statute is not negligence per se, but is merely evidence of negligence. *Hurlbut, supra.*

We will not extend a violation of § 39-646 to show an assumption of risk. As we stated in *Hurlbut*, "We do not conclude that the mere act of walking along a roadway or on a roadway is of itself an assumption of risk of an accident involving severe personal injuries." *Id.* at 418, 264 N.W.2d at 177.

In the *Hurlbut* case, the plaintiff was approximately 315 feet north of her driveway, walking south along the right side of a shouldered highway at night. She was struck from behind by defendant's vehicle, which was also traveling south. This court upheld the trial court's decision not to submit the defendant's tendered instruction concerning the plaintiff's assumption of risk, regardless of whether she was walking on the shoulder or on the traveled portion of the road.

There was no discussion in *Hurlbut* of whether the plaintiff knew that the defendant's vehicle was approaching. Likewise, there is no evidence in the instant case to suggest whether the decedent had knowledge of the appellee's approaching pickup.

As expressed in Prosser and Keeton on the Law of Torts, *Negligence: Defenses* § 68 at 487 (5th ed. 1984):

"Knowledge of the risk is the watchword of assumption of risk." Under ordinary circumstances the plaintiff will not be taken to assume any risk of either activities or conditions of which he has no knowledge. Moreover, he must not only know of the facts which create the danger, but he must comprehend and appreciate the nature of the danger he confronts. . . . Knowledge of the general danger may not be enough, and some courts require knowledge of the specific risk that caused the plaintiff's harm. The standard to be applied is, in theory at least, a subjective

one, geared to the particular plaintiff and his situation, rather than that of the reasonable person of ordinary prudence who appears in contributory negligence. . . . His failure to exercise ordinary care to discover the danger is not properly a matter of assumption of risk, but of the defense of contributory negligence.

One does not assume the risk of an unknown or hidden danger. *Mandery v. Chronicle Broadcasting Co.*, 228 Neb. 391, 423 N.W.2d 115 (1988). In *Hickman v. Parks Construction Co.*, 162 Neb. 461, 474, 76 N.W.2d 403, 411 (1956), we stated that the doctrine of assumption of risk "applies to *known dangers* and not to those things from which, in possibility, danger may flow." (Emphasis in original.)

Clearly, as *Hurlbut* indicates, walking on the right side of a road is, of itself, merely something from which, in possibility, danger may flow. Further, there is no evidence in the record to suggest that decedent had any knowledge that appellee's pickup was approaching from behind her. At most, appellee's testimony that decedent darted out and into the side of his truck would seem to imply that decedent did not know of the truck's presence. The evidence shows that the decedent knew only that it was generally more dangerous to walk on the right side of the road than on the left side.

When a defendant pleads assumption of risk as an affirmative defense in a negligence action, the defendant has the burden to establish the elements of assumption of risk before that defense, as a question of fact, may be submitted to the jury. *Mandery, supra.* Before the defense of assumption of risk was submissible to the jury, evidence must have shown that the decedent (1) *knew* of the danger, (2) understood the danger, and (3) voluntarily exposed herself to the *danger which proximately caused* the plaintiff's damage. *Mandery, supra.* The appellee has failed to meet his burden.

Submitting the defense of assumption of risk was therefore prejudicial to the appellant's substantial right to a fair trial and constituted reversible error, as the evidence was insufficient to sustain an affirmative finding on the assumption of risk issue. See *Mandery, supra.*

Accordingly, the judgments of the district court are reversed,

and the causes are remanded for a new trial. We need not reach appellant's second assignment of error.

REVERSED AND REMANDED FOR A NEW TRIAL.